Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Alyssa D. Brown (SBN 301313)
abrown@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310-474-9111
Facsimile:  310-474-8585

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS THELE and MELO PORTER, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC,<br><br>     Defendant. | Case No. 5:25-cv-09704-NC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1    Plaintiffs Thomas Thele and Melo Porter ("Plaintiffs"), individually and on behalf of all

2    others similarly situated ("Class Members"), by and through their undersigned counsel, bring this

3    class action complaint against Defendant Google LLC ("Google" or "Defendant").

4  **I.  <u>INTRODUCTION</u>**

5    1.    Much like its competitors, Google has developed and deployed an artificial

6    intelligence program named Gemini throughout its portfolio of services. Some of Google's most

7    popular services include Gmail, Chat, and Meet, which millions of Americans use every day to

8    email, instant message, and videoconference, respectively. Until recently, Google users could "opt

9    in" and turn on Gemini as a "Smart" feature for these services, purportedly to "personalize [their]

10   experience":



2.      However, on or about October 10, 2025, Google secretly turned on Gemini for all its users' Gmail, Chat, and Meet accounts, enabling AI to track its users' private communications contained in those platforms without the users' knowledge or consent. As of the date of this filing, Google continues to track these private communications with Gemini *by default*, requiring users to affirmatively find this data privacy setting and shut it off, despite never "agreeing" to such AI tracking in the first place ("When you turn this setting on, you agree . . . .").

3.      Despite users never giving Google informed consent to track and store their private communications, Google does just that, using Gemini AI to access and exploit the entire recorded history of its users' private communications, including literally every email and attachment sent and received in their Gmail accounts.

4.      Google's deceptive and outrageous conduct violates its users' reasonable expectations of privacy. The intent and efforts of individuals to safeguard their private information and communications must be respected. The ramifications of unauthorized access to voluminous private communications can be severe, and individuals accordingly go to great lengths to safeguard not only their own email and messaging accounts, but, in the case of parents and guardians, also that of their minor children.

5.      While falsely characterizing its illusory privacy controls, Google deceptively and unconscionably deprived and continues to deprive Plaintiffs and Class Members of their privacy right to send and receive private communications via email, chat, and video. This is true not only for Plaintiffs and Class Members, but also for their children, whose private communications they also sought to protect.

6.      Google's conduct violates the California Invasion of Privacy Act (Cal. Pen. Code §§ 630, et seq. ("CIPA")), the California Computer Data Access and Fraud Act (Cal. Pen. Code § 502 ("CDAFA")), the Stored Communications Act (18 U.S.C. § 2701, et seq. ("SCA")), and California's Constitutional Right to Privacy, and it constitutes an unlawful intrusion upon seclusion.

## II.      **THE PARTIES**

7.      Plaintiff Thomas Thele resides in Cook County, Illinois. From at least October 10,

2025 until the present, Plaintiff Thele has maintained and used, and continues to maintain and use, his Google account, including the Gmail, Chat, and/or Meet services. Plaintiff Thele values his privacy—and the privacy of his family and friends—in the use of these password-protected services and reasonably expected the messages and conversations therein to remain private. Despite this reasonable expectation, Google surreptitiously turned on the "Smart features" setting in Plaintiff Thele's Data privacy settings without Plaintiff Thele's knowledge or consent and began tracking Plaintiff Thele's private communications with Gemini AI. Throughout the relevant time period, Plaintiff Thele regularly used his Gmail, Chat, and/or Meet accounts throughout the day, unaware that Google's Gemini AI was monitoring and tracking those private messages and conversations. In the interest of protecting his privacy and security, Plaintiff Thele does not recite here the precise Gmail, Chat, and/or Meet communications that he sent or received with the "Smart features" setting surreptitiously turned on during the relevant time, but he does allege that the following could be determined from those communications: financial information and records, employment information and records, religious affiliations and activities, political affiliations and activities, medical care and records, the identities of his family, friends, and other contacts, social habits and activities, eating habits, shopping habits, exercise habits, the extent to which he is involved in the activities of his children (if any), and what those activities are.

8.    Plaintiff Melo Porter resides in Santa Cruz County, California. From at least October 10, 2025 until the present, Plaintiff Porter has maintained and used, and continues to maintain and use, her Google account, including the Gmail, Chat, and/or Meet services. Plaintiff Porter values her privacy—and the privacy of her family and friends—in the use of these password-protected services and reasonably expected the messages and conversations therein to remain private. Despite this reasonable expectation, Google surreptitiously turned on the "Smart features" setting in Plaintiff Porter's Data privacy settings without Plaintiff Porter's knowledge or consent and began tracking Plaintiff Porter's private communications with Gemini AI. Throughout the relevant time period, Plaintiff Porter regularly used her Gmail, Chat, and/or Meet accounts throughout the day, unaware that Google's Gemini AI was monitoring and tracking those private messages and conversations. In the interest of protecting her privacy and security, Plaintiff Porter does not recite

here the precise Gmail, Chat, and/or Meet communications that she sent or received with the "Smart features" setting surreptitiously turned on during the relevant time, but she does allege that the following could be determined from those communications: financial information and records, employment information and records, religious affiliations and activities, political affiliations and activities, medical care and records, the identities of his family, friends, and other contacts, social habits and activities, eating habits, shopping habits, exercise habits, the extent to which she is involved in the activities of her children (if any), and what those activities are.

9.    Defendant Google LLC is a limited liability company headquartered in Mountain View, California, and formed under the laws of Delaware. Google is a sophisticated mobile operating system, email, and applications developer in the business of commercializing personal data extracted from the use of tools and services connected to the internet. As such, Google is aware of and benefits from the conduct described herein. Indeed, this forms a core component, among others, of Google's business model.

## III.    <u>JURISDICTION AND VENUE</u>

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some Members of the proposed Class are citizens of a state different from Defendant.

11.    This Court has personal jurisdiction over Defendant because Defendant owns and operates a business that is headquartered in this District and conducts substantial business throughout California. Defendant expressly consents to the jurisdiction of the federal or state courts of Santa Clara County, California through its terms of service.[1]

12.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(1), as Defendant is headquartered in this District.

## IV.    <u>CHOICE OF LAW</u>

13.    California law governs the substantive legal issues in this case. Google's Terms of

---

[1] Google Terms of Service (last modified May 22, 2024), *available at* https://policies.google.com/terms?hl=en.

Service provide in pertinent part that California law will apply to any disputes arising out of or relating to Google's terms of service.[2]

## V.    STATEMENT OF FACTS

14.    According to recent reporting, an estimated 1.8 billion people globally in 2025 have active Gmail accounts.[3]  It is estimated that 41.9% of United States citizens use Gmail, which amounts to over 130 million American users.[4]

15.    In Google's Gmail, Chat, and Meet services, users reasonably expect to customize their use of these services to their preferences by managing various functionalities and settings. They can, for example, change their preferred language, time zone, or storage settings. Included among these functionalities, within "Data privacy," is the option to turn on or off Google's use of "Smart features"—that is, Google's ability to track the user's "email, chat, and video content" with its Gemini AI technology. In its terms of service, Google's only reference to AI is in the context of "develop[ing], improv[ing], and updat[ing]" its services:

> We're constantly developing new technologies and features to improve our services. For example, we use artificial intelligence and machine learning to provide you with simultaneous translations, and to better detect and block spam and malware. As part of this continual improvement, we sometimes add or remove features and functionalities, increase or decrease limits to our services, and start offering new services or stop offering old ones.[5]

In its privacy policy, Google states that "across our services, you can adjust your privacy settings to control whether we collect some types of data and how we use it."[6]

16.    On information and belief, Google turned on this "Smart features" option—without any notice to users—for all Gmail, Chat, and Meet accounts on or about October 10, 2025, which enabled Gemini AI to scan, read, and analyze every email (and email attachment), message, and conversation on those services. Google users now must proactively go into their account settings

---

[2] *Id.*

[3] Robert A. Lee, *Gmail Statistics 2025: User Growth, Market Share & Emerging Trends*, SQ MAGAZINE, Aug. 6, 2025, *available at* https://sqmagazine.co.uk/gmail-statistics/.

[4] *Id.*; *see also* Dominic Reigns, *35+ Gmail Statistics And User Trends [2025 Updated]*, ABOUT CHROMEBOOKS, Aug. 7, 2025, *available at* https://www.aboutchromebooks.com/gmail-statistics/.

[5] *Supra* n.1.

[6] Google Privacy Policy (last modified July 1, 2025), *available at* https://policies.google.com/privacy?hl=en-US.

and locate and turn off this feature to prevent Gemini AI from tracking their Gmail, Chat, or Meet communications. Despite this setting being in default, "opt out" status since at least October 10, the setting is still worded as an "opt in" feature: "*When you turn this setting on, you agree . . .*" (emphasis added). Google's secretive Gmail, Chat, and Meet tracking practices are not only deceptive and unethical, they are directly contrary to users' reasonable expectations of privacy.

17.    It appears that even tech journalists monitoring Google's use of Gemini AI in Gmail are not fully aware of this change. Recent articles about using Gemini in Google services like Gmail still characterize the feature as something that must be agreed to and affirmatively turned on.[7] Nonetheless, this reporting confirms that, when active, Gemini is "downright creepy" in its ability to track, analyze, and immediately know private information:

> In testing [Gemini in Gmail], it was able to tell me useful information, such as when my next Trade coffee delivery would arrive and if I had any pressing emails that required responses. But it goes far beyond that.
>
> When I asked it about my first crush, Gemini was able to determine that it occurred in elementary school, as well as tell me the name of my first love, how we met, and when. Upon request, Gemini also told me who my top Facebook friends were in 2009 and who my best friend was in 2010. Gemini even explained that one of my character flaws is that I get "too laser-focused on what [I] want, which extracts a toll on [my] relationships, much like Drake from the Uncharted game." And, yes, that's one of my favorite game franchises, which apparently Gemini knows, too.
>
> How does Gemini know that? The simple answer is that the information is somewhere within the 16 years' worth of my email history that it can access.
>
> . . . .
>
> I don't plan on letting Gemini access my personal email anymore.[8]

18.    Google is now able to collect and utilize users' private communications through AI "Smart features" and combine it with existing data profiles it has for its users. Back in 2012, Google announced that it would eliminate distinctions between data collected from different Google

---

[7] Ruben Circelli, *I Let Gemini Access My Gmail, and It's Downright Creepy*, PC Mag, Nov. 5, 2025, *available at* https://www.pcmag.com/opinions/i-let-gemini-access-my-gmail-and-its-downright-creepy.

[8] *Id.*

products and services for purposes of its advertising, data analysis, and other activities, saying specifically that Google "may combine information you've provided from one service with information from other services," and "[w]e'll treat you as a single user across all our products."[9]

19.    Through the use of its Gemini AI technology, Google has created the means to illicitly compile all of its users' private communications on its platforms without those users' express knowledge and consent. The data from these communications enables Google to cross-reference and conduct unlimited analysis toward unmerited, improper, and monetizable insights into users' private lives, including their social, professional, and other relationships.

20.    The collection and use of users' private communications violates users' reasonable expectations of privacy, and also puts them at increased risk for further privacy violations. Data breaches and other security vulnerabilities are increasingly common among companies that store user data. As a major aggregator of valuable personally identifying and other information, Google is an obvious target for hackers. Any information that Google stores through its Gemini AI platform may eventually be stolen, if it has not already been. In 2018, for example, Google announced that it had discovered a vulnerability in its Google+ program that exposed personal account information to third-parties, contrary to its user agreements and representations. Reportedly, in order to protect its public image, Google failed to disclose that information to the public for months, and came clean only *after* the security risk was discovered by the media.[10]

21.    Each of the following acts defy social norms and invade reasonable privacy expectations: tracking private communications contrary to users' consent, misleading users regarding whether the AI tracking required the users to opt out, and failing to disclose how AI was monitoring, tracking, and utilizing these private communications. Normally, mobile device and

---

[9] Alma Whitten, *Updating our privacy policies and terms of service*, GOOGLE OFFICIAL BLOG (Jan. 24, 2012), *available at* https://googleblog.blogspot.com/2012/01/updating-our-privacy-policies-and-terms.html.

[10] Douglas MacMillan and Robert McMillan, *Google Exposed User Data, Feared Repercussions of Disclosing to Public*, THE WALL STREET JOURNAL (Oct. 8, 2018), *available at* https://www.wsj.com/articles/google-exposed-user-data-feared-repercussions-of-disclosing-to-public-1539017194. Shortly thereafter, Google shut down the Google+ product entirely. Bill Chappell, *Google Accelerates Google+ Shutdown After 52.5 Million Users' Data Exposed*, NPR (Dec. 11, 2018), *available at* https://www.npr.org/2018/12/11/675529798/with-52-5-million-users-data-exposed-on-google-google-quickens-shutdown.

Internet users such as Plaintiffs are able to affirmatively control the flow of sensitive information about themselves through "settings" and "permissions" that they grant, or withhold, from third parties, particularly private parties such as Google.  Plaintiffs' and Class Members' expectations that those settings and permissions would be heeded and effective, and that they could send and receive communications privately without being tracked by Google, are eminently reasonable.

22.    Plaintiffs and Class Members took specific steps to protect their private communications (as well as the private communications of their minor children) and had a reasonable expectation that Google would not use AI to monitor and track their private communications without their informed consent. Based on Google's representations and omissions, context, and industry norms, they expected Google to heed and follow their instructions and, as a result, expected that their private communications would be *private*, not tracked and utilized by Google's AI tool for Google's own benefit and to the detriment of their personal privacy. Those reasonable expectations were consistent with sentiments that are widely shared in American society and elsewhere, and grounded in long-standing social norms and jurisprudence protecting privacy.

23.    Invasion of privacy has been recognized as a common law tort for more than a century. In *Griswold v. Connecticut*, 381 U.S. 479 (1965), the Supreme Court confirmed the primacy of privacy rights, explaining that the Constitution operates in the shadow of a "right of privacy older than the Bill of Rights." For its part, California amended its constitution in 1972 to specifically enumerate a right to privacy in its very first section. *See* Cal. Const. Art. I, § 1.

24.    Google itself has long acknowledged the importance of user control over privacy settings. In 2018, Google's Chief Privacy Officer testified to United States Senate Committee on Commerce, Science, and Transportation that "users trust [Google] to keep their personal information confidential *and under their control*."[11]

25.    According to a poll by the Pew Research Center, 93% of adults believe that being in control of who can get information about them is important, and 90% believe that controlling

---

[11] Written Testimony of Keith Enright Chief Privacy Officer, United States Senate Committee on Commerce, Science, and Transportation, *Examining Safeguards for Consumer Data Privacy*, (Sept. 26, 2018), *available at* https://nsarchive.gwu.edu/document/17926-keith-enright-chief-privacy-officer-google (emphasis added).

what information is collected about them is important.[12] Additionally, Americans say they do not approve of observation without consent: 88% say it is important that they not have someone watch or listen to them without their permission.[13]

26.     According to a 2013 Pew Research study, "86% of Internet users have tried to be anonymous online and taken at least one step to try to mask their behavior or avoid being tracked."[14] For example, 64% percent of adults claim to clear their cookies and browser histories in an attempt to be less visible online.[15] Such behaviors exemplify people's expectation that their personal information will not be tracked by others without their consent or permission, and that settings claiming to allow them to protect such information will be effective.

27.     A 2010 study comparing the opinions of young adults between the ages of 18 to 24 with other age categories (25-34, 35-44, 45-54, 55-64, and 65+) found that a large percentage of young adults were in harmony with older Americans regarding concerns about online privacy, norms, and policy suggestions.[16] For example, 88% of young adults surveyed responded that "there should be a law that requires websites and advertising companies to delete all stored information about an individual"; for individuals in the 45-54 age range, 94% approved of such a law.[17]

28.     The same study noted that "[o]ne way to judge a person's concern about privacy laws is to ask about the penalties that companies or individuals should pay for breaching them." A majority of the 18- to 24-year-olds polled selected the highest dollar amount of punishment ("more than $2,500") in response to how a company should be fined if it purchases or uses someone's

---

[12] Mary Madden and Lee Rainie, *Americans' Attitudes About Privacy, Security and Surveillance*, PEW RESEARCH CENTER (May 20, 2015), *available at* https://www.pewresearch.org/internet/2015/05/20/americans-attitudes-about-privacy-security-and-surveillance/.

[13] *Id.*

[14] Lee Rainie, et al., *Anonymity, Privacy, and Security Online*, PEW RESEARCH CENTER (Sept. 5, 2013) *available at* https://www.pewresearch.org/internet/2013/09/05/anonymity-privacy-and-security-online/.

[15] *Id.*

[16] Chris Hoofnagle, et al., *How Different Are Young Adults from Older Adults When It Comes to Information Privacy Attitudes & Policies*, University of Pennsylvania Scholarly Commons (April 14, 2010), *available at* https://www.ftc.gov/sites/default/files/documents/public_comments/privacy-roundtables-comment-project-no.p095416-544506-00125/544506-00125.pdf.

[17] *Id.*

personal information illegally; across all age groups, 69% of individuals opted for the highest fine. Beyond a fine, approximately half of the sample (across all age groups) chose the harshest penalties for companies using a person's information illegally: putting them out of business and imposing jail time.[18]

29.    Google claimed to offer people a choice when it came to data privacy. In purporting to offer users the ability to adjust data privacy settings to control whether Google's AI technology accesses their Gmail, Chat, and Meet accounts, Google warranted that it would respect those users' privacy choices. In reality, Google rendered users' choices meaningless when it surreptitiously turned on the "Smart features" setting for all Gmail, Chat, and Meet users without their knowledge or consent. Google's AI tracking of users' private communications was surreptitious and purposely deceptive, as they did not provide notification of this change, thus requiring users to discover this change on their own and manually turn off the "Smart features" setting.

30.    Not only were Google's representations about privacy likely to deceive people, Google did in fact deceive the millions of people who use Gmail, Chat, and Meet. Ordinary users, including Plaintiffs, reasonably expected that their Gmail, Chat, and Meet accounts would not be tracked and stored by AI unless they affirmatively turned on that feature in their Google accounts.

31.    Google's misrepresentations continue, despite public reporting. Users are still being deceived and tracked without consent unless they are made aware of the change to their data privacy settings and affirmatively turn off the "Smart features" setting, which is still worded in terms that deceptively suggest it is something that must be agreed to and turned on by the user, not Google.

## VI.    CLASS ALLEGATIONS

32.    Plaintiffs bring this class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of all members of the following class, which is referred to throughout this Complaint as the "Class":

> All natural persons residing in the United States with Google accounts whose private communications in Gmail, Chat, and/or Meet were tracked by Google's Gemini AI after Google turned on "Smart features" in those persons' data privacy account settings.

---

[18] *Id.*

33.    Excluded from each Class are the following individuals: officers and directors of Google and its parents, subsidiaries, affiliates, any entity in which Google has a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

34.    Plaintiffs reserve the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

35.    This action readily satisfies the requirements set forth under Federal Rule of Civil Procedure 23:

a.    Each Class is so numerous that joinder of all Members is impracticable. Upon information and belief, Class Members number in the millions.

b.    There are questions of law or fact common to the Class. These questions include, but are not limited to, the following:

i.    Whether Google's acts and practices complained of herein amount to the use of "an electronic amplifying or recording device to eavesdrop upon or record" confidential communications in violation of CIPA;

ii.    Whether Google's acts and practices complained of herein amount to "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems" in violation of CDAFA;

iii.    Whether Google's acts and practices complained of herein amount to "intentionally accesses without authorization a facility through which an electronic communication service is provided" in violation of the SCA;

iv.    Whether Google's acts and practices complained of herein amount to egregious breaches of social norms;

v.    Whether Google acted intentionally in violating Plaintiffs' and Class Members' privacy rights;

vi.    Whether an injunction should issue; and

vii.    Whether declaratory relief should be granted.

c.    Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and Class

1    Members maintained private, password-protected Gmail, Chat, and/or Meet accounts that they

2    thought were secure and not being tracked by Google. Despite these efforts and contrary to

3    Google's representations, Plaintiffs and Class Members nonetheless had their Gmail, Chat, and/or

4    Meet accounts tracked by Google's AI technology. Plaintiffs and Class Members did not consent

5    to Google's tracking of their private communications, which forms the basis for this suit.

6              d.      Moreover, like all Class Members, Plaintiffs suffered a substantial risk of

7    repeated injury in the future. Plaintiffs continue to use the Gmail, Chat, and/or Meet services that

8    are capable of being tracked by Google's Gemini AI, and Google may unilaterally change his

9    privacy settings again in the future. Google has shown deliberate indifference to Plaintiffs' and

10   Class Members' desire to keep their communications private, and has indeed taken pains to deceive

11   and mislead Plaintiffs (and all Class Members) and to conduct its business contrary to their privacy

12   rights, and contrary to the plain meaning of its own terms of service in favor of surreptitiously and

13   deceitfully monitoring their private communications. Google's deceptive and deliberate actions

14   have thwarted and continue to threaten Plaintiffs' (and Class Members') ability to exercise control

15   over their own privacy while using their Gmail, Chat, and Meet accounts. Because the conduct

16   complained of herein is systemic, Plaintiffs and Class Members face substantial risk of the same

17   injury in the future. Google's conduct is common to all Class Members and represents a common

18   pattern of conduct resulting in injury to all Class Members. Plaintiffs have suffered the harm alleged

19   and have no interests antagonistic to any other Class member.

20             e.      Plaintiffs will fairly and adequately protect the interests of the Class.

21   Plaintiffs' interests do not conflict with the interests of the Class Members. Furthermore, Plaintiffs

22   have retained competent counsel experienced in class action litigation, consumer protection

23   litigation, and electronic privacy litigation. Plaintiffs' counsel will fairly and adequately protect and

24   represent the interests of the Class. Federal Rule of Civil Procedure 23(a)(4) and 23(g) are satisfied.

25             f.      In acting as alleged above, and in failing and refusing to cease and desist

26   despite being exposed, Google has acted on grounds generally applicable to the entire Class,

27   thereby making final injunctive relief and corresponding declaratory relief each appropriate with

28   respect to the Class as a whole. The prosecution of separate actions by individual Class Members

1  would create the risk of inconsistent or varying adjudications with respect to individual Class

2  Members that would establish incompatible standards of conduct for Google.

3          g.      Injunctive relief is necessary to prevent further unlawful and unfair conduct

4  by Google. Money damages, alone, could not afford adequate and complete relief, and injunctive

5  relief is necessary to restrain Google from continuing to commit its illegal and unfair violations of

6  privacy.

7  **VII.**    **CAUSES OF ACTION**

8  

**Count One**
**(Violations of CIPA, Cal. Pen. Code §§ 630, et seq.)**

9  

10      36.    Plaintiffs repeat and reallege all preceding paragraphs contained herein.

11      37.    Cal. Pen. Code § 630 provides that "[t]he Legislature hereby declares that advances

12  in science and technology have led to the development of new devices and techniques for the

13  purpose of eavesdropping upon private communication and that the invasion of privacy resulting

14  from the continual and increasing use of such devices and techniques has created a serious threat

15  to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

16      38.    Google's acts and practices complained of herein, engaged in for purposes of

17  tracking and storing indefinitely the private communications of its users without their consent—

18  and indeed in direct contravention of Google's own wording of the "Smart features" setting that

19  suggests it must be turned on to "opt in," when, in reality, Google has already secretly turned it on

20  and requires users to find the setting and turn it off to "opt out"—violated and continues to violate

21  Cal. Pen. Code § 632.

22      39.    Cal. Pen. Code § 632 prohibits the use of "an electronic amplifying or recording

23  device to eavesdrop upon or record [a] confidential communication, whether the communication is

24  carried on among the parties in the presence of one another or by means of a telegraph, telephone,

25  or other device . . . ."

26      40.    In direct violation of this prohibition and without the consent of Plaintiffs or Class

27  Members, Google has been using its Gemini AI technology to eavesdrop and record the confidential

28  communications of Plaintiffs and Class Members on their Gmail, Chat, and Meet accounts.

41.    Google accessed or caused to be accessed Plaintiffs' and Class Members' private communications from California. On information and belief, Google uses servers located in California that allow Google to access private communications of Plaintiffs and Class Members. Google's terms of service indicate that California law controls the use of its services.

42.    As a result of Google's violations of Cal. Pen. Code § 632, Plaintiffs and Class Members are entitled to the following relief:

a.    A declaration that Google's conduct violates CIPA;

b.    Statutory damages and/or trebled actual damages;

c.    Injunctive relief in the form of, *inter alia*, an order enjoining Google from continuing to access Class Members' private communications in violation of CIPA;

d.    Injunctive relief in the form of, *inter alia*, an order requiring Google to destroy all data created or otherwise obtained from its illegal tracking of Class Members' private communications; and

e.    An award of attorney's fees and costs of litigation as provided by CIPA, the private attorney general doctrine existing at common law and also codified at California Civil Code Section 1021.5, and all other applicable laws.

**Count Two**
**(Intrusion Upon Seclusion)**

43.    Plaintiffs repeat and reallege all preceding paragraphs contained herein.

44.    Plaintiffs and Class Members have reasonable expectations of privacy in their Gmail, Chat, and Meet accounts. Plaintiffs' and Class Members' private affairs include communications contained in these accounts.

45.    The reasonableness of such expectations of privacy is supported by Google's unique position to monitor Plaintiffs' and Class Members' private communications through its access to Plaintiffs' and Class Members' Gmail, Chat, and Meet accounts. It is further supported by the surreptitious nature of Google's tracking.

46.    Defendant intentionally intruded on and into Plaintiffs' and Class Members' solitude, seclusion, or private affairs by intentionally using AI to track their private

1    communications.

2         47.    These intrusions are highly offensive to a reasonable person. The communications

3    sent and received through Gmail, Chat, and Meet are reasonably considered private information

4    and are thus password protected, encrypted, and/or protected via two-factor authorization.

5    Moreover, Google engaged in AI tracking deceptively and without the informed consent of

6    Plaintiffs and Class Members. Also supporting the highly offensive nature of Google's conduct is

7    the fact that Google surreptitiously turned on this AI tracking "feature" without informing or

8    obtaining the consent of Plaintiffs and Class Members.

9         48.    Plaintiffs and Class Members were harmed by the intrusion into their private affairs

10   as detailed throughout this Complaint.

11        49.    Google's actions and conduct complained of herein were a substantial factor in

12   causing the harm suffered by Plaintiffs and Class Members.

13        50.    As a result of Google's actions, Plaintiffs and Class Members seek damages and

14   punitive damages in an amount to be determined at trial. Plaintiffs and Class Members seek punitive

15   damages because Google's actions—which were malicious, oppressive, and willful—were

16   calculated to injure Plaintiffs and Class Members and made in conscious disregard of Plaintiffs'

17   and Class Members' privacy rights. Punitive damages are warranted to deter Google from engaging

18   in future misconduct.

19                              **Count Three**
20        **(California Constitutional Right to Privacy, Cal. Const. Art. I, § 1)**

21        51.    Plaintiffs repeat and reallege all preceding paragraphs contained herein.

22        52.    Plaintiffs and Class Members have reasonable expectations of privacy in their

23   Gmail, Chat, and Meet accounts. Plaintiffs' and Class Members' private affairs include

24   communications contained in these accounts.

25        53.    Google intentionally intruded on and into Plaintiffs' and Class Members' solitude,

26   seclusion, right of privacy, or private affairs by intentionally tracking the private communications.

27        54.    These intrusions are highly offensive to a reasonable person. The communications

28   sent and received through Gmail, Chat, and Meet are reasonably considered private information

and are thus password protected, encrypted, and/or protected via two-factor authorization. Moreover, Google engaged in AI tracking deceptively and without the informed consent of Plaintiffs and Class Members. Also supporting the highly offensive nature of Google's conduct is the fact that Google surreptitiously turned on this AI tracking "feature" without informing or obtaining the consent of Plaintiffs and Class Members.

55.     Plaintiffs and Class Members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

56.     Google's actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and Class Members.

57.     As a result of Google's actions, Plaintiffs and Class Members seek damages and punitive damages in an amount to be determined at trial. Plaintiffs and Class Members seek punitive damages because Google's actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiffs and Class Members and made in conscious disregard of Plaintiffs' and Class Members' privacy rights. Punitive damages are warranted to deter Google from engaging in future misconduct.

## Count Four
### (Violations of CDAFA, Cal. Pen. Code § 502)

58.     Plaintiffs repeat and reallege all preceding paragraphs contained herein.

59.     The California legislature enacted CDAFA with the intent of "expand[ing] the degree of protection afforded to individuals . . . from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code §502(a). The enactment of CDAFA was motivated by the finding that "the proliferation of computer technology has resulted in a concomitant proliferation of . . . unauthorized access to computers, computer systems, and computer data." *Id.*

60.     Plaintiffs' and Class Members' computing devices used to access their Gmail, Chat, and Meet accounts constitute "computers" within the scope of CDAFA.

61.     Google violated the following sections of CDAFA:

a.     Section 502(c)(1), which makes it unlawful to "knowingly access[] and

without permission . . . use[] any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data;"

b.    Section 502(c)(2), which makes it unlawful to "knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network;" and

c.    Section 502(c)(7), which makes it unlawful to "knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network."

62.    Google knowingly accessed Plaintiffs' and Class Members' Gmail, Chat, and Meet accounts without their permission by surreptitiously activating Gemini AI access that intercepts and transmits data, communications, and personal information concerning Plaintiffs and Class Members.

63.    Google used data, communications, and personal information that it intercepted and took from Plaintiffs' and Class Members' Gmail, Chat, and Meet accounts to wrongfully and unjustly enrich itself at the expense of Plaintiffs and Class Members.

64.    Defendant took, copied, intercepted, and made use of data, communications, and personal information from Plaintiffs' and Class Members' Gmail, Chat, and Meet accounts.

65.    Defendant knowingly and without Plaintiffs' and Class Members' permission accessed or caused to be accessed their Gmail, Chat, and Meet accounts by installing—without Plaintiffs' and Class Members' informed consent—AI software that intercepts and/or takes data, communications, and personal information concerning Plaintiffs and Class Members.

66.    Google accessed or caused to be accessed Plaintiffs' and Class Members' data, communications, and personal information from California. On information and belief, Google uses servers located in California that allow Google to access and process the data, communications and personal information concerning Plaintiffs and Class Members. Google's terms of service indicate that California law controls the use of its services.

67.     Google was unjustly enriched by intercepting, acquiring, taking, or using Plaintiffs' and Class Members' data, communications, and personal information without their permission, and using it for Google's own financial benefit. Google has been unjustly enriched in an amount to be determined at trial.

68.     As a direct and proximate result of Google's violations of CDAFA, Plaintiffs and Class Members suffered damages.

69.     Pursuant to CDAFA Section 502(e)(1), Plaintiffs and Class Members seek compensatory, injunctive, and equitable relief in an amount to be determined at trial.

70.     Pursuant to CDAFA Section 502(e)(2), Plaintiffs and Class Members seek an award of reasonable attorney's fees and costs.

71.     Pursuant to CDAFA Section 502(e)(4), Plaintiffs and Class Members seek punitive or exemplary damages for Google's willful violations of CDAFA.

**Count Five**
**(Violations of the SCA, 18 U.S.C. § 2701, et seq.)**

72.     Plaintiffs repeat and reallege all preceding paragraphs contained herein.

73.     The SCA provides a cause of action against any person who "intentionally accesses without authorization a facility through which an electronic communication service is provided," or any person "who intentionally exceeds an authorization to access that facility; and thereby obtains, alters or prevents authorized access to a wire or electronic communication while it is in electronic storage in such a system." 18 U.S.C. § 2701(a).

74.     The SCA defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof;" and "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17).

75.     The SCA defines an "electronic communications service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

76.     Google    intentionally    accessed    without    authorization    or    intentionally    exceeded

authorization to access facilities through which an electronic communications services was provided when it used its Gemini AI technology to access the Plaintiffs' and Class Members' Gmail, Chat, and Meet accounts for purposes of tracking their private communications.

77.    The Gmail, Chat, and Meet services utilized by Plaintiffs and Class Members on their computing devices provide electronic communications services to Plaintiffs and Class Members because they "provide to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

78.    The Gmail, Chat, and Meet services to which the Plaintiffs and Class Members use or subscribe to provide electronic communication services to Plaintiffs and Class Members because they "provide to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

79.    Neither the Plaintiffs and Class Members nor the third parties with whom they communicated with on Gmail, Chat, and Meet authorized the extent of Google's access to Plaintiffs' and Class Members' computing devices and Google's services therein.

80.    Plaintiffs' and Class Members' Gmail, Chat, and Meet accounts—and the computing devices, applications, and/or web browsers through which they accessed those services—also are facilities under the SCA because they comprise the software necessary for and "through which (the) electronic communications service is provided."

81.    Google intentionally accessed Plaintiffs' and Class Members' Gmail, Chat, and Meet accounts without authorization when Google turned on the Gemini AI access to those services without obtaining the consent of the Plaintiffs and Class Members.

82.    Upon information and belief, Google's acquisition of electronic communications from Plaintiffs and Class Members included private communications Plaintiffs and Class Members had with third parties that are not affiliated with Google.

83.    Plaintiffs and Class Members were harmed by Google's violations and, pursuant to 18 U.S.C. § 2707(c), are entitled to statutory damages or actual damages, including profits earned by Google attributable to the violations, punitive damages, costs, and reasonable attorney's fees.

## VIII.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs request that judgment be entered against Google and that the Court grant the following:

A.    An order determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs are proper class representatives, that Plaintiffs' attorneys shall be appointed as Class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, and that Class notice be promptly issued;

B.    Judgment against Google for Plaintiffs' and Class Members' asserted causes of action;

C.    Appropriate declaratory relief against Google;

D.    Injunctive relief in the form of, *inter alia*, an order enjoining Google from continuing its practice of accessing, using, and/or storing Plaintiffs' and Class Members' private communications without their knowledge or consent in violation of CIPA, CDAFA, and/or SCA;

E.    Injunctive relief in the form of, *inter alia*, an order enjoining Google from continuing its practice of tracking, recording, and using Plaintiffs' and Class Members' private communications;

F.    An order awarding Plaintiffs and the Class Members damages, special damages, general damages, and restitution;

G.    An order requiring Google to pay punitive damages and exemplary damages;

H.    An order requiring Google to pay pre-judgment and post-judgment interest;

I.    Reasonable attorney's fees and costs reasonably incurred; and

J.    Any and all other and further relief to which Plaintiffs and the Class may be entitled.

## IX.    <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: November 12, 2025        Respectfully Submitted,

*/s/  Tina Wolfson*
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Alyssa D. Brown (SBN 301313)
abrown@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310.474.9111
Facsimile:   310.474.8585

Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone:  917.336.0171
Facsimile:   917.336.0177

*Counsel for Plaintiffs and the Proposed Class*

- 21 -