BENJAMIN S. SOFTNESS (SBN 361435)
bsoftness@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

LAURA E. HARRIS (Admitted *pro hac vice*)
lharris@kslaw.com
**KING & SPALDING LLP**
1290 Avenue of the Americas, 14th Floor
New York, NY 10104
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

ZACHARY A. MCENTYRE (Admitted *pro hac vice*)
zmcentyre@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-2176
Facsimile: (404) 572-5100

*Counsel for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| THOMAS THELE and MELO PORTER, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC,<br><br>              Defendant. | Case No. 5:25-cv-09704-NW<br><br>[*The Honorable Noël Wise*]<br><br>**DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: April 15, 2026<br>Time: 9:00 AM<br>Location: Courtroom 3 – 5th Floor |

**NOTICE OF MOTION AND MOTION**

Pursuant to Federal Rule of Civil Procedure 7.1, Defendant Google LLC ("Google") discloses the following:

PLEASE TAKE NOTICE that on April 15, 2026, at 9:00 AM, Google will move to dismiss claims asserted against it in the First Amended Complaint, ECF 6. The hearing will be held before the Honorable Noël Wise in Courtroom 3 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, CA 95113. At the Court's discretion, the hearing may also be held by telephone or by videoconference.

Google seeks to dismiss all claims asserted against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and upon such other matters as may be presented to the Court at the time of the hearing or otherwise.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Plaintiff's First Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and whether such dismissal should be with prejudice because amendment would be futile.

Dated: January 21, 2026

**KING & SPALDING LLP**

By: _/s/ Laura E. Harris_

Laura E. Harris
Benjamin S. Softness
Zachary A. McEntyre

_Counsel for Defendant_
_Google LLC_

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 3

    A.    The Relevant Google Services ............................................................... 3

    B.    Google's Privacy Disclosures ................................................................ 4

    C.    Plaintiffs' Claims ................................................................................... 5

III.  LEGAL STANDARD ......................................................................................... 6

IV.   ARGUMENT ...................................................................................................... 7

    A.    Plaintiffs Lack Standing Because They Do Not Allege an Injury in Fact ............... 7

    B.    Plaintiffs Fail to Plead Essential Elements of Each Claim .................... 10

        1.    Plaintiffs Fail to Allege That Their Communications are Confidential under Section 632 .................... 10

        2.    Plaintiffs' Intrusion Upon Seclusion and Constitutional Claims Fail as a Matter of Law .................... 12

        3.    Plaintiffs' CDAFA Claims Fail for Lack of Unauthorized Access and Lack of Damage or Loss .................... 14

            a.    Google was authorized to access Plaintiffs' communications within the meaning of CDAFA .................... 15

            b.    Plaintiffs do not allege a cognizable injury .................... 16

        4.    Plaintiffs' SCA Claim Fails as a Matter of Law .................... 17

    D.    Plaintiffs' Allegations Are Not Entitled to the Presumption of Truth .................... 17

V.    CONCLUSION .................................................................................................. 19

**Cases**

*Andrews v. Sirius XM Radio, Inc.*,
    932 F.3d 1253 (9th Cir. 2019).......................................................................................... 16

*In re Apple iPhone Antitrust Litig.*,
    846 F.3d 313 (9th Cir. 2017).............................................................................................. 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................... 6, 18, 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................................. 6

*Bock v. Washington*,
    33 F.4th 1139 (9th Cir. 2022) ............................................................................................ 9

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ............................................................................ 15

*Bui-Ford v. Tesla, Inc.*,
    2024 WL 694485 (N.D. Cal. Feb. 20, 2024) .................................................................. 16

*Campbell v. Facebook Inc.*,
    77 F. Supp. 3d 836 (N.D. Cal. 2014) .............................................................................. 11

*Daniel v. Nat'l Park Serv.*,
    891 F.3d 762 (9th Cir. 2018)............................................................................................... 9

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ........................................................................................... 18

*Doe v. Meta Platforms, Inc.*,
    690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..................................................................... 16, 17

*Doe v. Wyndham Hotels & Resorts*,
    2024 WL 3088722 (E.D. Cal. June 20, 2024) ........................................................... 18, 19

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014)............................................................................................. 18

*In re Facebook Priv. Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ........................................................................ 15, 16

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020)............................................................................................. 17

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) (*per curiam*) ................................................................... 6

*In re Finjan Holdings, Inc.*,
   58 F.4th 1048 (9th Cir. 2023) ....................................................................... 3, 6, 12

*Four Navy Seals v. Associated Press*,
   413 F. Supp. 2d 1136 (S.D. Cal. 2005) ........................................................... 12

*Garcia v. Enter. Holdings, Inc.*,
   78 F. Supp. 3d 1125 (N.D. Cal. 2015) ......................................................... 3, 18

*Gator.com Corp. v. L.L. Bean, Inc.*,
   398 F.3d 1125 (9th Cir. 2005) ......................................................................... 10

*In re Google Location Hist. Litig.*,
   428 F. Supp. 3d 185 (N.D. Cal. 2019) ........................................................ 4, 13

*In re Google, Inc. Priv. Policy Litig.*,
   2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ............................................... 17, 18

*In re Google, Inc. Priv. Policy Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ............................................................... 12

*Hammerling v. Google, LLC*,
   2024 WL 937247 (9th Cir. Mar. 5, 2024) ........................................................ 14

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........................................................... 14

*Heiting v. Taro Pharms. USA, Inc.*,
   709 F. Supp. 3d 1007 (C.D. Cal. 2023) ................................................. 15, 16, 17

*Hovagimian v. Maxum Cas. Ins. Co.*,
   2022 WL 765005 (C.D. Cal. Mar. 8, 2022) ..................................................... 16

*Javier v. Assurance IQ, LLC*,
   2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ..................................................... 13

*Khamooshi v. Politico LLC*,
   786 F. Supp. 3d 1174 (N.D. Cal. 2025) ............................................................. 8

*Kishnani v. Royal Caribbean Cruises Ltd.*,
   2025 WL 1745726 (N.D. Cal. June 24, 2025) (Wise, J.) ............................. 2, 7, 8, 9

*Lawyers for Fair Reciprocal Admission v. United States*,
   141 F.4th 1056 (9th Cir. 2025) ........................................................................ 18

*Lindsay-Stern v. Garamszegi*,
   2015 WL 12645024 (C.D. Cal. Apr. 15, 2015) ................................................ 16

*Lopez v. Apple, Inc.*,
   519 F. Supp. 3d 672 (N.D. Cal. 2021) .............................................................. 17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .......................................................................................... 7

*M.D. v. Google LLC*,
    2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) ........................................................ 4, 13, 14

*Menzel v. Scholastic, Inc.*,
    2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ........................................................... 19

*Mikulsky v. Bloomingdale's LLC*,
    713 F. Supp. 3d 833 (S.D. Cal. 2024) ...................................................................... 13

*Mitchener v. CuriosityStream, Inc.*,
    2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ............................................................ 8, 9

*Moran v. HSBC Bank USA, N.A.*,
    2015 WL 139705 (N.D. Cal. Jan. 9, 2015) ............................................................... 19

*Morilha v. Alphabet, Inc.*,
    2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) ............................................................ 9

*Nowak v. Xapo, Inc.*,
    2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ......................................................... 16

*In re Oliveras*,
    103 Cal. App. 5th 771 (2024) .................................................................................. 15

*People v. Nakai*,
    183 Cal. App. 4th 499 (2010) .................................................................................. 11

*Perez v. Romantix Online, Inc.*,
    2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) .......................................................... 13

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) .................................................................... 15

*Popa v. Microsoft Corp.*,
    153 F.4th 784 (9th Cir. 2025) .......................................................................... 7, 12, 14

*Revitch v. New Moosejaw, LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......................................................... 11

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018) ................................................................................ 12

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ................................................................................................ 10

*Swarts v. Home Depot, Inc.*,
    689 F. Supp. 3d 732 (N.D. Cal. 2023) .................................................................... 11

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
    315 F. Supp. 3d 1147 (C.D. Cal. 2018) .................................................................. 16

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ............................................................................................... 7, 9

*Weiner v. ARS Nat'l Servs., Inc.*,
    887 F. Supp. 2d 1029 (S.D. Cal. 2012) ............................................................ 10

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ...................................................... 12, 17

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................................ 13

**Statutes**

18 U.S.C. § 2701 ............................................................................... 6, 17, 18

Cal. Pen. Code § 502 ...................................................................... 6, 15, 16, 17

Cal. Pen. Code § 632 ...................................................................... 6, 10, 11, 12

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) .......................................................... 6

Federal Rule of Civil Procedure 12(b)(6) .......................................................... 6

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

Plaintiffs Thomas Thele and Melo Porter claim that Defendant Google LLC ("Google") violated their privacy by secretly engaging certain automation and personalization features in three Google products. But Plaintiffs do not allege any factual support whatsoever for their claims. They do not allege that *any specific* communication of theirs was ever accessed, much less that it was misused. Nor do they allege any facts establishing that they were harmed by Google's alleged conduct, let alone that it ever occurred. Much more is necessary to confer Article III standing, and Plaintiffs' claims fail as a matter of law.

According to the First Amended Complaint ("Complaint" or "FAC"), ECF 6 (filed Nov. 12, 2025), Plaintiffs are users of Google's Gmail, Chat, and Meet services.[1] Those services include certain automation and personalization features—collectively called "Smart features"—like suggesting text when a Gmail user is composing an email or automatic sorting and filtering of the email messages in a user's inbox. Gmail, Chat, and Meet users can control whether Smart features is enabled in those services using a switch in their product settings.

Plaintiffs allege "on information and belief" that, in October 2025, Google surreptitiously changed the "default" setting for the switch that controls Smart features for Gmail, Chat, and Meet, making the Smart features switch "on" by default. Plaintiffs contend that, prior to October 2025, Smart features for Gmail, Chat, and Meet was "off," or disabled, by default, meaning that users of those products did not have access to those features unless they affirmatively chose to enable them. Plaintiffs further allege that this supposed change to the default setting allowed Google generative AI capabilities (referenced in the Complaint as "Gemini") to access all of Plaintiffs' communications and glean certain unspecified insights about Google users. On these alleged bases, Plaintiffs assert various privacy claims. Plaintiffs' allegations suffer from at least three flaws, each of which independently warrants dismissal.

*First*, Plaintiffs do not allege that any of Google's purported conduct affected their own

---

[1] Gmail is a web-based email service; Chat is a web-based instant-messaging service; and Meet is an online videoconferencing service.

data. They do not allege that any of their own communications were collected, scanned, analyzed, or used. Nor do they identify which (if any) of their communications purportedly implicates a protectable privacy interest. As this Court has held, *see Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *3 (N.D. Cal. June 24, 2025), by failing to plead that the alleged conduct had any particularized impact *on them*, Plaintiffs have not pled facts sufficient to confer Article III standing.

*Second*, Plaintiffs fail to plead basic elements of each of their claims. To start, Plaintiffs fail to allege that their particular communications—which took place on Google's servers—were objectively "confidential" communications under California's Invasion of Privacy Act ("CIPA"), or that Google's conduct was "highly offensive," as required to state claims for intrusion upon seclusion and violation of the California Constitution. Plaintiffs' statutory claims under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") and federal Stored Communications Act ("SCA") likewise fail because Plaintiffs cannot allege that Google lacked authorization to access its own services.

*Third*, Plaintiffs' Complaint is a textbook example of failure to plead sufficient factual matter to state plausible allegations. Plaintiffs plead no factual basis for their key contention that Smart features for Gmail, Chat, and Meet was "off" by default before October 2025 or that the default setting was subsequently switched to be "on." For example, they do not allege that they observed the setting in the "off" position before October or in the "on" position after October—or even that they checked their own settings at *any* time. They do not allege that their Gmail, Chat, and Meet services performed or behaved any differently, or that information of theirs was accessed or used. Plaintiffs' conclusory assertion that Google "secretly" changed the default setting is also at odds with their own allegations. *See* FAC ¶ 17. Plaintiffs' pleading deficiencies cannot be cured: their allegations are not only implausible, they are contradicted by material on which Plaintiffs themselves rely.

For all of these reasons, the Complaint should be dismissed without leave to amend.

## II.  FACTUAL BACKGROUND[2]

### A.  The Relevant Google Services

Google offers a "portfolio of services" to users, including "Gmail, Chat, and Meet," which provide email, instant-messaging, and videoconferencing services, respectively. FAC ¶ 1. These products include a range of features, some of which are always available (for example, the ability to attach a document to an email), and some of which can be enabled or disabled in the products' settings menu. *Cf. id.* ¶ 15.

One set of features available in these services is called "Smart features." *See id.* ¶¶ 1, 15. Smart features in Gmail, Chat, and Meet is a collection of features that add a degree of automation and personalization to a user's experience of those products—when it is on, Google uses "email, chat, and video content to personalize [the user's] experience." *Id.* ¶ 1 (image). As reflected in the screenshot on the Complaint's first page, Smart features is internal to "these products." *Id.*

Gemini is Google's family of advanced artificial intelligence ("AI") models and the chatbot they power. *Id.* ¶¶ 1, 15. Plaintiffs appear to equate Gemini with Smart features, alleging that Google users could "turn on Gemini as a 'Smart' feature" within Gmail, Chat, and Meet. *Id.* ¶ 1; *see also, e.g.*, *id.* ¶ 8 (alleging that "Google surreptitiously turned on the 'Smart features' setting . . . and began tracking Plaintiff Porter's private communications with Gemini AI"). Plaintiffs do not allege facts that support that assertion. In fact, the assertion is contradicted by a news article on which Plaintiffs rely. The article, published by PC MAG, explains that users could add Gemini functionality to their Gmail, Chat, or Meet experiences only if they also affirmatively subscribed to and paid for a "premium Gemini plan." Ex. C at 2.[3] The author of the article explains that he "signed up for [Google's] AI Pro Plan," and that "signing up for a premium plan" will "let Gemini

---

[2] Google accepts Plaintiffs' well-pled allegations as true solely for the purposes of this Motion to Dismiss, and where not contradicted by documents properly subject to judicial notice. As outlined in the accompanying Request for Judicial Notice, however, Google respectfully requests the Court's consideration of several documents either incorporated by, or relevant to, the Complaint and meeting the standard for judicial notice. "When a general conclusion in a complaint contradicts specific facts retold in a document . . . incorporated by reference in the complaint, . . . those specific facts are controlling." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) ("The Court need not accept as true any allegations contradicted by matters properly subject to judicial notice").

[3] All citations to Exhibits are to Exhibits to the Declaration of Laura E. Harris, filed contemporaneously with the accompanying Request for Judicial Notice.

into your inbox." *Id.* But Plaintiffs do not allege that they signed up or paid for such a plan.

## B.    Google's Privacy Disclosures

To provide Gmail, Chat, and Meet, Google must access and use some user data. Plaintiffs acknowledge Google's Terms of Service and its Privacy Policy as documents that explain what data Google discloses and for what purposes. *See* FAC ¶ 15. By expressly invoking these contracts, *see, e.g.*, *id.* ¶¶ 11, 13 & n.1; *id.* ¶ 15 & nn. 5–6, Plaintiffs presumably do not dispute that they are bound by them. For good measure, however, Google notes that its Terms of Service provide that "by accessing or using our services, . . . you're agreeing to these terms" and the incorporated Privacy Policy. Ex. B at 2 (Terms of Service); *see also id.* at 4 ("You also agree that our Privacy Policy applies to your use of our services."). As noted in the accompanying Request for Judicial Notice, courts in this District routinely take judicial notice of Google's Privacy Policy and its Terms of Service. *See, e.g.*, *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 189 (N.D. Cal. 2019); *M.D. v. Google LLC*, 2025 WL 2710095, at *2–3 (N.D. Cal. Sept. 23, 2025).

Google's Privacy Policy explains that Google collects "[c]ommunications data, such as emails," and that the information Google collects—including these communications—may be used for a range of purposes, including developing new features, providing Google's services, and personalizing and customizing services for the individual user. *See* Ex. A at 19–22. Google's Terms of Service further explain that Google "sometimes add[s] or remove[s] features and functionalities" from its services, and that, from time to time, it "start[s] offering new services or stop[s] offering old ones." Ex. B at 4. Among the examples of "new technologies and features" offered by Google are "artificial intelligence and machine learning." *Id.*

As Plaintiffs acknowledge, Google discloses that users "can adjust [their] privacy settings to control whether we collect some types of data and how we use it," while some data collection and use cannot be controlled (some, for example, is necessary to provide the service). *See* Ex. A at 1–2; *see also* FAC ¶ 15 (reciting the Privacy Policy). Smart features in Gmail, Chat, and Meet is a setting that can be adjusted. *See id.* ¶¶ 1, 16.

## C.    Plaintiffs' Claims

Plaintiffs have Google accounts and use some or all of Google's Gmail, Chat, and Meet

services—they do not specify which. *Id.* ¶¶ 7–8. Their complaint rests on two core factual allegations.

*First*, Plaintiffs allege "[o]n information and belief" that Google "turned on this 'Smart Features' option—without any notice to users—for all Gmail, Chat, and Meet accounts on or about October 10, 2025." *Id.* ¶ 16. According to Plaintiffs, this rendered the Smart features "default[] 'opt out.'" *Id.* (A feature is "opt-out" when it is enabled by default, leaving users the choice to disable— or opt out of—the functionality. An "opt-in" feature is disabled, or off, by default.) Plaintiffs do not allege any facts establishing that the Smart features setting was previously off by default (opt-in). They do not allege, for instance, that they observed the switch for Smart features to be "off" in their own accounts prior to October 10, 2025; that they ever observed the switch to be "on" *after* October 10, 2025; or that they have ever turned the setting off or on. Plaintiffs further allege that the language on the Smart features setting is "worded as an 'opt in' feature," because it describes what happens "'[w]hen you turn this setting on.'" *Id.*; *see also id.* ¶ 31 (alleging that the setting is "worded in terms that deceptively suggest it is something that must be agreed to and turned on by the user").

*Second*, Plaintiffs allege that turning on Smart features in Gmail, Chat, and Meet had the effect of "secretly turn[ing] on Gemini for all its users' Gmail, Chat, and Meet accounts, enabling AI to track its users' private communications contained in those platforms without the users' knowledge or consent." *Id.* ¶ 2; *accord id.* ¶ 16 (Smart features for Gmail, Chat, and Meet "enabled Gemini AI to scan, read, and analyze every . . . conversation on those services"). According to Plaintiffs, this new Gemini access allegedly grants Google "the means to illicitly compile all of its users' private communications" and "enables Google to cross-reference and conduct unlimited analysis toward unmerited, improper, and monetizable insights into users' private lives." *Id.* ¶ 19. Plaintiffs do not allege that, after October 10, 2025, they observed their data being used or scanned by Gemini, and they do not allege any awareness or experience of the supposed "illicit[] compil[ing]" they mention, such as a change in the behavior of the products.

Plaintiffs enumerate categories of personal information that "could" be determined from access to their Gmail, Chat, and Meet data, such as "financial information and records, employment

1  information and records, religious affiliations and activities, political affiliations and activities,"

2  and more. *Id.* ¶¶ 7–8. Plaintiffs do not allege that any information of this sort was in fact accessed,

3  or that it even exists. In fact, Plaintiffs explicitly decline to allege "precise Gmail, Chat, and/or

4  Meet communications that [they] sent or received . . . during the relevant time." *Id.*

5      On the basis of their allegations, Plaintiffs assert claims for (1) violations of CIPA, Cal.

6  Pen. Code § 632; (2) intrusion upon seclusion; (3) violations of the California constitutional right

7  to privacy; (4) violations of the CDAFA, Cal. Pen. Code § 502; and (5) violations of the SCA, 18

8  U.S.C. §§ 2701 *et seq.* FAC ¶¶ 36–83.

9  **III.    LEGAL STANDARD**

10      Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss an action

11  for failure to allege subject matter jurisdiction, including failure to allege injury sufficient for

12  Article III standing. *E.g.*, *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 319 (9th Cir. 2017).

13  Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts

14  to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

15  (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

16  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

17  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under this standard, it is not enough for facts alleged

18  to be "merely consistent with," or raise the "sheer possibility" of liability; rather, to be plausible,

19  the complaint must plead "factual content that allows the court to draw the reasonable inference

20  that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

21      The Court need not "assume the truth of legal conclusions merely because they are cast in

22  the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*per curiam*)

23  (internal quotation marks omitted). "When a general conclusion in a complaint contradicts specific

24  facts retold in a document . . . incorporated by reference in the complaint, . . . those specific facts

25  are controlling." *Finjan Holdings, Inc.*, 58 F.4th at 1052 n.1.

26  **IV.    ARGUMENT**

27      At the threshold, Plaintiffs lack Article III standing. Because Plaintiffs do not allege that

28  Google improperly accessed or misused data specific to their Google accounts, they have failed to

plead an injury in fact, and the Complaint must be dismissed for lack of subject matter jurisdiction. Independently, Plaintiffs fail to state a claim because they do not allege facts establishing the essential elements of each of their claims. Finally, the Complaint is defective because Plaintiffs' allegations are contradictory, unsupported by factual matter, and too implausible to be presumed true.

### A.     Plaintiffs Lack Standing Because They Do Not Allege an Injury in Fact

Federal courts lack jurisdiction to hear a case unless a plaintiff can establish the "irreducible constitutional minimum" of Article III standing: injury in fact, traceability to the defendant's conduct, and judicial redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021). In this case, Plaintiffs cannot carry that burden because they fail to show injury in fact.

Pleading an injury in fact requires showing that the defendant invaded "a legally protected interest" in a "concrete and particularized" way, and that the injury is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. A plaintiff cannot establish standing by simply alleging that the defendant has violated a statute, as Plaintiffs do here. *See TransUnion*, 594 U.S. at 427; *Kishnani*, 2025 WL 1745726, at *3. Instead, Plaintiffs *themselves* must have "been concretely harmed by a defendant's" alleged conduct. *Kishnani*, 2025 WL 1745726, at *3 (emphasis removed). "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC*, 594 U.S. at 427. In privacy cases, this means that "a plaintiff must identify the specific personal information . . . disclosed that implicates a protectable privacy interest." *Kishnani*, 2025 WL 1745726, at *3 (citation omitted); *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 791 & n.5 (9th Cir. 2025) (affirming dismissal of privacy claims for lack of standing where the "complaint includes no allegations plausibly linking . . . potential, generalized harms to the operation of [the technology on defendant's website].").

Plaintiffs do not remotely meet this standard. Rather than identifying the personal information Google allegedly accessed, Plaintiffs *explicitly decline* to "identify the specific

personal information [they] disclosed that implicates a protectable privacy interest." *Kishnani*, 2025 WL 1745726, at *3; *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *3–4 (N.D. Cal. Aug. 6, 2025) (same); *see* FAC ¶¶ 7–8 (Plaintiffs "do[] not recite . . . the precise communications" that were "track[ed]"). Plaintiffs state that certain allegedly protectible categories of information "*could* be determined" by access to their communications, FAC ¶¶ 7–8 (emphasis added), but they stop short of alleging that any such information *was* implicated. For example, Plaintiffs allege that review of their communications "could" reveal their "involve[ment] in the activities of [their] children, *if any*." *Id.* (emphasis added). The qualifier "if any" makes clear that the categories Plaintiffs list are purely hypothetical, rather than descriptions of Plaintiffs' own communications. And hypothetical harm does not amount to an injury in fact sufficient to confer standing. *See, e.g.*, *Mitchener*, 2025 WL 2272413, at *5 (dismissing privacy claims for lack of jurisdiction where plaintiff posited only "hypothetical" harm); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (dismissing for lack of standing where "allegations [were] too vague to assert a protectable privacy interest").

Many of the same shortcomings this Court identified in *Kishnani* and *Mitchener* are present here. *First*, the allegations in those cases were too general to constitute "concrete injury" because the plaintiff failed to include "basic facts" such as "how many times she visited the site, what information she provided, [and] what information Defendant captured.'" *Kishnani*, 2025 WL 1745726, at *3 (quotation omitted); *Mitchener*, 2025 WL 2272413, at *4. Here, too, Plaintiffs have failed to allege any specific instances in which their information was collected, what (if anything) was specifically collected, or what specific information was provided to Google. Plaintiffs not only failed to plead those facts—they *refused* to disclose them.

*Second*, the Court in *Kishnani* held that the plaintiff's "alleg[ations] that Defendants *could* gain" sensitive information about a person by engaging in the conduct at issue were insufficient to confer Article III standing because such allegations "fail[ed] to convert that hypothetical into concrete harm to *him*"—for example, by alleging that the defendants "collected *his* biographical information." *Kishnani*, 2025 WL 1745726, at *4; *accord Mitchener*, 2025 WL 2272413, at *5. Again, the same is true here. Plaintiffs allege that "Google has created the means to illicitly compile

all of its users' private communications," FAC ¶ 19, but they do not allege that *their* information was compiled. Plaintiffs thus fail to allege any improper access to or disclosure of "specific personal information." *Kishnani*, 2025 WL 1745726, at *3; *Mitchener*, 2025 WL 2272413, at *5; *see also Morilha v. Alphabet, Inc.*, 2024 WL 5205542, at *2 (N.D. Cal. Dec. 23, 2024) (dismissing for lack of standing where "allegations that Google *may* have disclosed private information [were] too speculative to satisfy the injury-in-fact requirement").

Even had Plaintiffs identified specific information that was purportedly accessed by Google, they fail to allege that any concrete harm flowed from that conduct. In three of five counts, Plaintiffs offer only the conclusory assertion that they were "harmed by" Google's conduct. FAC ¶¶ 48–49, 55–56 ("Plaintiffs and Class members were harmed by the intrusion into their private affairs."); *id.* ¶ 83 ("Plaintiffs and Class Members were harmed by Google's violations."). In the other two counts, Plaintiffs fail to allege any harm whatsoever, pleading only the conclusions that they "suffered" or are "entitled" to "damages." *See id.* ¶¶ 42, 68. Such "naked assertions" fail to plead standing because a "plaintiff may not 'rely on a bare legal conclusion to assert injury-in-fact.'" *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 767 (9th Cir. 2018) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011)). The closest Plaintiffs come to identifying a concrete harm is that the "collection . . . of users' private communications . . . puts them at increased risk for further privacy violations," such as data breaches. FAC ¶ 20. But this allegation is insufficient because the "mere risk of future harm" cannot confer standing on a claim for money damages. *TransUnion*, 594 U.S. at 437; *see also Bock v. Washington*, 33 F.4th 1139, 1144 (9th Cir. 2022) (explaining that standing cannot be premised on a "risk of future harm" that "has not yet materialized").

Plaintiffs also lack standing to seek injunctive relief. Although a risk of future harm can in theory confer standing on a claim for injunctive relief, the harm must be "concrete and particularized" and "actual or imminent," not conjectural or hypothetical." *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). In other words, "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, but only if the "risk of harm is sufficiently imminent and substantial." Plaintiffs' vague references to the possibility of "[d]ata breaches and other security vulnerabilities," FAC ¶ 20, do not clear this bar.

As noted, Plaintiffs do not allege which data of theirs (if any) Google has accessed or what Google will or does do with it. *See id.* ¶ 19 (alleging that data from unspecified "communications" could "enable[] Google to cross-reference and conduct unlimited analysis toward unmerited, improper, and monetizable insights"). Moreover, as their own allegations make clear, Plaintiffs can themselves eliminate any risk of future harm by disabling the feature they say puts them at risk. *See id.* ¶ 1 (screenshot); *id.* ¶ 16 (users can "turn off this feature"). Plaintiffs thus have no basis to seek an injunction. *See Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129–30 & n.3 (9th Cir. 2005) (noting that a plaintiff "can moot her need for injunctive relief by her own conduct" and collecting cases) (quotation omitted).

Dismissal for lack of standing is therefore appropriate.

**B.    Plaintiffs Fail to Plead Essential Elements of Each Claim**

Setting aside Plaintiffs' lack of Article III standing, each claim independently fails because Plaintiffs do not—and cannot—allege facts necessary to state essential elements of their claims.

**1.    Plaintiffs Fail to Allege That Their Communications are Confidential under Section 632**

Plaintiffs first allege that Google violated California Penal Code section 632, which is a section of CIPA. *See* FAC ¶¶ 36–42. A section 632 claim requires three elements: "(1) an electronic recording of (or eavesdropping on); (2) a 'confidential' communication; and (3) all parties did not consent." *Weiner v. ARS Nat'l Servs., Inc.*, 887 F. Supp. 2d 1029, 1032 (S.D. Cal. 2012). CIPA defines a "confidential communication" as one "carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties." *Id.* § 632(c). The definition specifically "*excludes* a communication made . . . in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." *Id.* (emphasis added).

To rebut the presumption that online communications are generally not considered confidential under CIPA, *see Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (collecting cases); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746–47 (N.D. Cal. 2023) (dismissing section 632 claim under this presumption), a plaintiff must allege facts about

their particular communications that establish an objectively reasonable expectation of confidentiality. *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848–49 (N.D. Cal. 2014); *Revitch*, 2019 WL 5485330, at *3 (discussing the requirement that plaintiffs must point to "particular internet communications" to state a claim under section 632).

Far from alleging "particular" circumstances sufficient to plausibly allege that their communications are objectively confidential under section 632, *Revitch*, 2019 WL 5485330, at *3, Plaintiffs *expressly decline* to provide *any* detail concerning the confidentiality of their communications—or any allegations concerning specific communications at all. *See* FAC ¶¶ 7–8. Instead, as to each Plaintiff, the Complaint merely recites an identical list of topics that *might* have been discussed. *Id.* Both Plaintiffs posit, for instance, that their communications *may* indicate the extent to which they are involved in the activities of their respective children, "*if any.*" *Id.* (emphasis added). Most critically, Plaintiffs' generalized descriptions contain no facts about these communications, their subject matter, or their recipients. *Campbell*, 77 F. Supp. 3d at 849; *see also People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010). These generic and hypothetical summaries do not remotely rise to the level of specificity required to rebut section 632's presumption.

Moreover, Plaintiffs do not allege that a third-party "eavesdrop[per]," Cal. Pen. Code § 632(a), has accessed communications that Google facilitates on its own services. Nor could they. Plaintiffs expressly incorporate by reference into the Complaint Google's Terms of Service and Privacy Policy, which govern Plaintiffs' use of Meet, Gmail, and Chat, *see, e.g.*, FAC ¶¶ 11–13, 15 & nn.1, 2, 5, 6. The Privacy Policy, for instance, discloses that Google "collect[s] the content you create, upload, or receive from others when using our services," including "email you write and receive," and that it does so for a range of purposes including to "to customize" and "personaliz[e]" its services, and "develop new products, features, and technologies." Ex. A at 2, 6, 20–22. The Terms of Service repeats that Google is "constantly developing new technologies and features" and cites as a specific "example" using "artificial intelligence" to provide both convenience (including real-time "translations") and spam protection. Ex. B at 4. Plaintiffs' conclusory and generalized allegations are squarely at odds with documents incorporated in the Complaint, *see In re Finjan Holdings*, 58 F.4th at 1052 n.1. As a result, Plaintiffs' CIPA claims must fail.

## 2. Plaintiffs' Intrusion Upon Seclusion and Constitutional Claims Fail as a Matter of Law

A claim for intrusion upon seclusion requires two elements: (1) intrusion into a private place, conversation, or matter (2) in a manner *highly* offensive to a reasonable person. *See In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 987 (N.D. Cal. 2014) (emphasis added); *see also Popa*, 153 F. 4th at 791 ("To show intrusion upon seclusion, a plaintiff must show an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, *of a kind that would be highly offensive to a reasonable man.*") (internal quotation marks omitted); *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1147 (S.D. Cal. 2005) ("offensiveness element" requires conduct that "rise[s] to the level of *exceptional prying* into another's private affairs") (emphasis added). The standard for claims under California's Constitutional Right to Privacy is similar but still more demanding—it imposes a "high bar" that requires an "egregious breach of social norms." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). Plaintiffs' allegations—premised on services Plaintiffs used and Google provided—are wholly insufficient to state a claim under either the common law or the California Constitution.

*First*, Plaintiffs cannot establish that they suffered any intrusion because they do not—and cannot—allege an "objectively reasonable expectation" that Google would not have access to its own services. *Google Priv. Policy*, 58 F. Supp. 3d at 973, 987–88. As discussed above, there can be no "objectively reasonable expectation" to that effect given express disclosures in Google's Privacy Policy and Terms of Service, which Plaintiffs have incorporated into the Complaint. *See supra* § B.1; *cf. Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (finding no privacy violation in light of Facebook's disclosures).

Courts have repeatedly rejected claims based on "interactions with Defendants' own website when [plaintiffs] choose to use that website." *Mikulsky v. Bloomingdale's LLC*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024); *see also Google Location Hist.*, 428 F. Supp. 3d at 198–99 (rejecting intrusion theory premised on use of Google services); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) ("[C]ourts have been less willing to find that users have

a cognizable privacy interest in browsing data collected only while users interact with the website of the defendant company.").

Moreover, "a party that consents to having information collected has no reasonable expectation of privacy." *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021); *see also, e.g.*, *M.D.*, 2025 WL 2710095, at *4 ("Consent generally defeats privacy claims."). Consent can be established through "terms of service and privacy policies." *Perez v. Romantix Online, Inc.*, 2025 WL 3085786, at *2 (N.D. Cal. Oct. 27, 2025) (quotation omitted). And Plaintiffs consented here by agreeing to Google's Privacy Policy and Terms of Service, both of which Plaintiffs rely on in the Complaint. *See* Ex. B at 3 ("Broadly speaking, we give you permission to access and use our services if you agree to follow these terms, which reflect how Google's business works and how we earn money."); *id.* at 4 ("You also agree that our Privacy Policy applies to your use of our services.").

Plaintiffs' (factually unsupported) allegation is that, with Smart features enabled by default, Gemini is now scanning the content of Plaintiffs' communications. But, as noted above, the Privacy Policy discloses—and Plaintiffs consented—that Google may collect (1) "the content you create, upload, or receive from others when using our services," including "email you write and receive," and (2) "[c]ommunications data, such as emails." Ex. A at 2, 20. And it may do so for purposes including "deliver[ing] Google's] services" (for example, "suggesting recipients from your contacts"), "[d]evelop[ing] new services" (such as generative AI services), "improv[ing] Google's] services," and "provid[ing] personalized services" (such as "recommendations" and "personalized content"). *Id.* at 5–6. Google's Terms of Service likewise explain that Google is "constantly developing new technologies and features," and cites "us[ing] artificial intelligence" as a particular "example" of one such technology. Ex. B at 4. Plaintiffs therefore consented to *precisely* what they allege Smart features does. *See* FAC ¶ 1 (screenshot explaining that Smart features "personalize[s] my experience"); *see also M.D.*, 2025 WL 2710095 at *5 (dismissing privacy claims where the "August 2024 Policy thus makes clear that BlueChew would share data about users' activity").

Plaintiffs seek to escape their consent by contending that Google's "wording of the 'Smart Features' setting" indicates that it "must be turned on to 'opt in,'" even though Google made the

feature on by default. *E.g.*, FAC ¶ 38. But Plaintiffs misread this language, which states that, "[w]hen you turn this setting on, you agree" to allow Google to use the necessary data to provide the feature. *Id.* ¶ 2. That statement is indisputably accurate whether the feature is "opt-in" or "opt-out." And the fact that Google permits users to disable Smart features does not vitiate the pre-existing consent to develop and launch the feature in the first instance.[4]

*Second*, Plaintiffs' generalized and conclusory allegations fail to meet the heightened standard required to establish "highly offensive" conduct. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (dismissing for lack of offensiveness where data collected allegedly revealed plaintiffs' "religious and political affiliations, their activity level, their sexual preferences and proclivities, and other habits and preferences"); *cf. Popa*, 153 F.4th at 791 ("A rents a room in a house adjoining B's residence, and for two weeks looks into the windows of B's upstairs bedroom through a telescope taking intimate pictures with a telescopic lens."). On the contrary, Plaintiffs refuse to allege any specific communications *at all*, instead alleging only that their communications "could" have contained various hypothetical categories of information. FAC ¶¶ 7–8. That is not enough.

*Finally*, Plaintiffs' constitutional claims fail for the same reasons as the intrusion upon seclusion claim. "Because of the similarity of the tests, courts consider the claims together." *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (quotation marks omitted). Consequently, the constitutional claim fails along with the common-law intrusion claim.

### 3. Plaintiffs' CDAFA Claims Fail for Lack of Unauthorized Access and Lack of Damage or Loss

Plaintiffs' claims under CDAFA, California Penal Code section 502 (FAC ¶¶ 58–71), fail for two independent reasons: (1) Google was authorized to access Plaintiffs' Gmail, Chat, and Meet communications, and (2) Plaintiffs have not plausibly alleged a sufficient injury.

---

[4] Plaintiffs relatedly allege that Google *changed* the Smart features default, from opt-in to opt-out. As detailed below, that allegation is implausible and indeed contradicted by factual matter incorporated into the Complaint. Because Plaintiffs do not allege *any* facts from which the Court could infer that Smart features' default setting was "off" prior to October 2025, that conclusory allegation is not entitled to the presumption of truth. *See infra* pp. 18–20.

**a.** **Google was authorized to access Plaintiffs' communications within the meaning of CDAFA**

CDAFA "was originally enacted to combat 'computer crime' and hacking." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023). In keeping with that purpose, CDAFA does not support liability for a defendant accused of accessing "its own website." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 716 (N.D. Cal. 2011); *accord In re Oliveras*, 103 Cal. App. 5th 771, 782 (2024) (no CDAFA liability for using "authorized access for an improper purpose"). In other words, "a [CDAFA] claim cannot be based simply on the method by which a defendant accesses a computer if the defendant otherwise has authorization to access the computer." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 131 (N.D. Cal. 2020).

Courts in this district routinely hold that under CDAFA, access is only "without authorization" if the defendant "circumvent[s] technical or code-based barriers in place to restrict or bar a user's access." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014) (collecting cases); *see also Facebook Priv. Litig.*, 791 F. Supp. 2d at 715 ("Individuals may only be subjected to liability for acting 'without permission' under Section 502 [CDAFA] if they access or use a computer, computer network, or website in a manner that overcomes technical or code-based barriers.") (cleaned up). Plaintiffs identify no code-based or technical barriers that Google had to circumvent here. Nor could they, with respect to Google's access to its own services. To the contrary, Google's Privacy Policy makes clear that Google has authority to collect "the content you create, upload, or receive from others when using [its] services," including "[c]ommunications data" and "things like email you write and receive." Ex. A at 2, 20. That Google has authorization to access users' emails is also reflected in the Terms of Service: if Google did not have access to users' communications, it could not "detect and block spam and malware." Ex. B at 4. Indeed, if Google lacked access to *its own* communications network, the network would not function at all.

At most, then, Plaintiffs dispute *how* Google provides the services Plaintiffs elected to use under the Terms of Service and Privacy Policy to which they agreed. That does not give rise to a CDAFA claim. *See Facebook Priv. Litig.*, 791 F. Supp. 2d at 716 ("It is thus impossible, on Plaintiffs' own allegations, for Defendant to be liable under the subsections of [CDAFA] which

require a defendant to act 'without permission,' as there were clearly no technical barriers blocking Defendant from accessing its own website.").

### b. Plaintiffs do not allege a cognizable injury

Nor have Plaintiffs alleged cognizable statutory injury. CDAFA permits recovery only for those "who suffer[] damage or loss by reason of a violation" of the statute. Cal. Pen. Code § 502(e). And CDAFA adopts a very "narrow conception of 'loss.'" *Andrews v. Sirius XM Radio, Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019);[5] *see also Bui-Ford*, 2024 WL 694485, at *6 (plaintiffs must plead a "cognizable 'damage or loss'"). Importantly, "alleged privacy invasions do not qualify under the statute." *Heiting*, 709 F. Supp. 3d at 1020; *accord Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1081–82 (N.D. Cal. 2023) (rejecting privacy violations and diminished value of data as viable theories of damage or loss under CDAFA). Rather, a plaintiff may only recover for "economic" loss. *Bui-Ford*, 2024 WL 694485, at *6.

Plaintiffs do not plead any facts establishing a specific, cognizable economic loss. The Complaint's only attempt to satisfy CDAFA's loss requirement is the conclusory allegation that "Plaintiffs and Class Members suffered damages" that were a "result of Google's violations" of the statute. FAC ¶ 68. That is insufficient. *See Lindsay-Stern v. Garamszegi*, 2015 WL 12645024, at *3 (C.D. Cal. Apr. 15, 2015) (under CDAFA, "conclusory statement that '[Plaintiff] has suffered damages in an amount to be proven at trial' is insufficient, even at the pleading stage") (citations omitted). Beyond those conclusory allegations, Plaintiffs do not allege that their data has been damaged or impaired in any way, nor do they identify any financial loss or cost they have incurred because of Google's alleged conduct. *See id.* Rather, the only "harm" Plaintiffs allege is non-economic: a loss of privacy. *E.g.*, FAC ¶¶ 21–23, 35(g), 48, 55. Courts routinely dismiss CDAFA claims premised on such illusory or intangible alleged injuries. *See, e.g.*, *Heiting*, 709 F. Supp. 3d

---

[5] *Andrews* concerned the federal Computer Fraud and Abuse Act ("CFAA") rather than CDAFA. But because CDAFA's and CFAA's loss provisions are substantively identical, *see Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020), decisions construing the federal statute apply with full force in the CDAFA context. *See Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *6 (N.D. Cal. Feb. 20, 2024); *see also Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1174 (C.D. Cal. 2018) ("The CDAFA is California's state-law analogue to the CFAA.").

at 1020; *Meta Platforms, Inc.*, 690 F. Supp. 3d at 1081–82.[6] The same result is warranted here.

### 4. Plaintiffs' SCA Claim Fails as a Matter of Law

To state a claim under the SCA, a plaintiff must allege that a defendant: (1) gained unauthorized access to a "facility" through which an electronic communication service is provided and that the defendant (2) accessed an electronic communication while it was in "electronic storage." *See* 18 U.S.C. 2701(a); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020). A provider cannot be liable for accessing its own services. *See In re Google, Inc. Priv. Policy Litig.*, 2013 WL 6248499, at *12 (N.D. Cal. Dec. 3, 2013). That is because the Act explicitly exempts "conduct authorized by the person or entity providing a wire or electronic communications service." 18 U.S.C. § 2701(c)(1). In other words, if the defendant itself provides the electronic communication service at issue, it cannot be liable. Indeed, such a claim "borders on frivolous." *Google Priv. Policy*, 2013 WL 6248499, at *12 ("[Google] plainly authorized the actions that it took itself."); *see also Lopez v. Apple, Inc*., 519 F. Supp. 3d 672, 686 (N.D. Cal. 2021) ("Apple is the service provider here and presumably authorized its own conduct.") (citations omitted).

*Yahoo Mail* is directly on point. 7 F. Supp. 3d 1016. There, plaintiffs alleged that Yahoo violated the SCA by allegedly scanning the content of Yahoo Mail emails for the purpose of targeted advertising. The court dismissed the unlawful-access claim with prejudice, holding that the SCA grants providers "immunity for alleged [SCA violations] for accessing electronic communications stored on their own servers." *Id.* at 1032. That is precisely the conduct alleged here. Plaintiffs' claim therefore fails.

### D. Plaintiffs' Allegations Are Not Entitled to the Presumption of Truth

Finally, Plaintiffs' Complaint must be dismissed because their allegations are implausible, conclusory, and internally inconsistent, including with respect to this critical operative paragraph:

---

[6] Plaintiffs also allege, without any elaboration or identification of a cause of action, that Google "unjustly enrich[ed]" itself when it "intercepted" Plaintiffs' communications. FAC ¶¶ 63, 67. Absent factual allegations about how Google purportedly "unjustly enriched" itself with Plaintiffs' data, such allegations do not save their CDAFA claim. *See, e.g.*, *Hovagimian v. Maxum Cas. Ins. Co.*, 2022 WL 765005, at *4 (C.D. Cal. Mar. 8, 2022) ("The [complaint] fails to state a claim because it fails to identify exactly how Defendants are unjustly enriched at Plaintiff's expense in non-conclusory terms . . . .").

On information and belief, Google turned on this "Smart features" option—without any notice to users—for all Gmail, Chat, and Meet accounts on or about October 10, 2025, which enabled Gemini AI to scan, read, and analyze every email (and email attachment), message, and conversation on those services.

FAC ¶ 16. Plaintiffs plead *no facts* supporting these allegations, let alone "sufficient factual matter" to render the allegations plausible. *Iqbal*, 556 U.S. at 678; *see also Lawyers for Fair Reciprocal Admission v. United States*, 141 F.4th 1056, 1065 (9th Cir. 2025). In fact, Plaintiffs' own documents show these allegations to be flatly wrong. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (noting a court is not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory") (citations omitted); *Garcia*, 78 F. Supp. 3d at 1136 ("the Court need not accept as true any allegations contradicted by matters properly subject to judicial notice or by exhibit") (internal quotation marks and citation omitted); *Doe v. Wyndham Hotels & Resorts*, 2024 WL 3088722, at *11 (E.D. Cal. June 20, 2024) ("Though a court must generally accept allegations in a complaint as true at the motion to dismiss stage, the court need not accept inconsistent allegations in a complaint as true.") (collecting cases).

*First*, nowhere do Plaintiffs explain the basis for their assertion that Smart features in Gmail, Chat, and Meet was secretly turned on in October 2025. Plaintiffs do not allege that they checked the Smart features toggle before, on, or after that date, or that they observed the switch to be off (or on) in their own settings. Nor do Plaintiffs plead factual matter from which the Court could infer that the feature was ever default off prior to October 2025. The only depiction of the settings page that Plaintiffs provide—a screenshot of an unknown user's account—is undated. FAC ¶ 1.

*Second*, even Plaintiffs concede that their central allegation is belied by a recent article they cite in the Complaint. *See Id.* ¶ 17 (citing Ex. C). As noted above, the article describes certain Gemini-powered features that can be disabled by changing a setting that is on by default. *See* Ex. C at 8 (explaining that a user "can toggle smart features (including Gemini) in Google Workplace [sic] off"). Beyond merely lacking any alleged facts that would nudge Plaintiffs' assertion "across the line from conceivable to plausible," *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (internal quotation marks and citation omitted), Plaintiffs

affirmatively cite, and rely on, industry reporting that *undermines* their allegations. This internal inconsistency deprives Plaintiffs' conclusory core allegation of the presumption of truth. *See also Doe*, 2024 WL 3088722, at \*11 (declining to accept as true "inconsistent allegations in [the] complaint").

*Third*, Plaintiffs' "belief," FAC ¶ 16, that Smart features in Gmail, Chat, and Meet permits Gemini to "scan, read, and analyze" their communications likewise has no factual basis. Plaintiffs allege no difference in their experience or use of Gmail, Chat, and Meet as a result of this purportedly secret change, and they fail to identify any other source to support their speculation. That deficiency is fatal. *See Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at \*2 (N.D. Cal. Mar. 19, 2018) (allegation on information and belief "must still be based on factual information") (internal quotation marks and citation omitted). The text accompanying the setting that controls Smart features does not suggest that the switch controls Gemini in any way. *See* FAC ¶ 1. Instead, that text indicates that the setting controls certain automations and personalizations only *within* Gmail, Chat, and Meet. *See id.* (Smart features "use my email, chat, and video content to personalize my experience . . . *in these products*") (emphasis added).

At bottom, Plaintiffs' conclusory and internally contradictory allegations are so implausible that they are not entitled to the presumption of truth and need not be accepted. *See Iqbal*, 556 U.S. at 681. Indeed, the contradiction here comes from technology journalism cited and incorporated in Plaintiffs' own Complaint. Because each of Plaintiffs' claims rests on these conclusory allegations, *see* FAC ¶¶ 40, 46, 54, 62, 76, the Complaint should be dismissed with prejudice. *E.g.*, *Moran v. HSBC Bank USA, N.A.*, 2015 WL 139705, at \*6 (N.D. Cal. Jan. 9, 2015) (concluding "that amendment would be futile" because "[t]he basic factual premise of Plaintiff's claim . . . is contradicted by judicially noticed facts").

## V.  CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss the Complaint with prejudice for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim.

Dated: January 21, 2026

**KING & SPALDING LLP**

By: _/s/ Laura E. Harris_

Laura E. Harris
Benjamin S. Softness
Zachary A. McEntyre

*Counsel for Defendant
Google LLC*