Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Alyssa D. Brown (SBN 301313)
abrown@ahdootwolfson.com
Lisa Cintron (SBN 356009)
lcintron@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: 310-474-9111
Facsimile: 310-474-8585

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS THELE and MELO PORTER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 5:25-cv-09704-NW <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> Hon. Noël Wise presiding <br><br> Courtroom 3 – 5th Floor <br><br> Hearing: Apr. 15, 2026 at 9:00 a.m. |

# TABLE OF CONTENTS

                                                                                                  **Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 1

III.    ARGUMENT ...................................................................................................... 2

        A.      Legal Standard ...................................................................................... 3

        B.      Plaintiffs Sufficiently Allege Article III Standing ................................ 3

                1.      Plaintiffs' Injuries Are Concrete ................................................. 3

                2.      Plaintiffs Have Standing to Seek Injunctive Relief .................... 7

        C.      Plaintiffs Plausibly Allege a Violation of the California Invasion of Privacy
                Act Because Google Used an Electronic Recording Device to Record
                Confidential Communications Without Plaintiffs' Consent ................... 9

                1.      Plaintiffs Sufficiently Allege Google Recorded Confidential
                        Communications Within the Meaning of the CIPA ..................... 9

                2.      Plaintiffs Did Not Consent to Gemini AI Monitoring or Recording
                        Plaintiffs' Confidential Communications .................................. 11

        D.      Plaintiffs Properly Plead Their California Constitutional and Intrusion
                Upon Seclusion Claims ........................................................................ 12

                1.      Plaintiffs Allege a Reasonable Expectation of Privacy in Their
                        Confidential Communications .................................................. 13

                2.      Google's Collection of Private Communications Is a Serious
                        Invasion of Plaintiffs' Protected Privacy Interests .................. 15

        E.      Plaintiffs Properly Plead a Claim for Violations of the California
                Comprehensive Computer Data Access and Fraud Act ...................... 18

                1.      Google Accessed Plaintiffs' Data Without Authorization ....... 18

                2.      Plaintiffs Sufficiently Allege a Cognizable Injury ................... 20

        F.      Plaintiffs Properly Plead Violations of the Stored Communications Act ............. 21

        G.      Plaintiffs Allegations Are Entitled to the Presumption of Truth ........ 22

IV.     CONCLUSION ................................................................................................ 23

OPPOSITION TO MOTION TO DISMISS
No. 5:25-cv-09704-NW

**Cases**

*A.B. by & through Turner v. Google LLC*,
  737 F. Supp. 3d 869 (N.D. Cal. 2024), *motion to certify appeal denied*, No. 23-
  cv-03101-PCP, 2024 WL 4933345 (N.D. Cal. Dec. 2, 2024) ............................................. 7, 8

*Am. Marriage Ministries v. Google, LLC*,
  No. 21-mc-80040-SK, 2021 WL 1526757 (N.D. Cal. Apr. 12, 2021) ................................... 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................... 3

*Brown v. Google*,
  525 F. Supp. 3d 1049 (N.D. Cal. 2021) ............................................................................. 19

*Brown v. Google LLC*,
  685 F. Supp. 3d 909 (N.D. Cal. 2023) ...................................................................... 4, 6, 9, 10

*Calhoun v. Google LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021) ............................................................................... 11

*Crispin v. Christian Audigier, Inc.*,
  717 F. Supp. 2d 965 (C.D. Cal. 2010) ............................................................................... 21

*D'Angelo v. FCA US, LLC*,
  726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......................................................................... 4, 11

*et seq. Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ......................................................................................... 5, 6

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................................... 11, 13, 14

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ........................................................................................... 6, 13

*Facebook, Inc. v. Power Ventures, Inc.*,
  No. 08-cv-05780-JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) .............................. 20, 21

*Flanagan v. Flanagan*,
  27 Cal. 4th 766 (2002) ................................................................................................... 9, 10

*Gabrielli v. Haleon US Inc.*,
  No. 25-cv-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........................... 4, 6

*In re Google Inc.*,
  No. 13-md-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........................... 11

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ................................................. 16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................. 17

*Harris v. County of Orange*,
682 F.3d 1126 (9th Cir. 2012) ................................................................ 3

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ................................................................. 12, 13, 16

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ................................................... 6

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................. 14

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ................................................. 7

*Kight v. CashCall, Inc.*,
200 Cal. App. 4th 1377 (2011) ....................................................... 9, 11

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025), *appeal dismissed*, No. 25-4452, 2025 WL 2943080 (9th Cir. Oct. 3, 2025) ...................... 6

*Loder v. City of Glendale*,
14 Cal. 4th 846 (1997) ......................................................................... 12

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............................................................................... 3

*Mayfield v. United States*,
599 F.3d 964 (9th Cir. 2010) ................................................................. 7

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................. 11

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ................................................. 15

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
906 F. Supp. 2d 1017 (C.D. Cal. 2012) ..................................... 4, 10, 11

*Mitchener v. CuriosityStream, Inc.*,
    No. 25-cv-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025), *appeal
    dismissed*, No. 25-4990, 2025 WL 3191910 (9th Cir. Oct. 23, 2025) ..................................... 6

*Phillips v. U.S. Customs & Border Prot.*,
    74 F.4th 986 (9th Cir. 2023) ............................................................................................. 5

*Popa v. Microsoft Corp.*,
    153 F.4th 784 (9th Cir. 2025) ........................................................................... 3, 6, 7, 17

*Ribas v. Clark*,
    38 Cal. 3d 355 (1985) ........................................................................................................ 9

*Rodriguez v. Google LLC*,
    772 F. Supp. 3d 1093 (N.D. Cal. 2025) ................................................................. 6, 12, 20

*Rowe v. Educ. Credit Mgmt. Corp.*,
    559 F.3d 1028 (9th Cir. 2009) ........................................................................................... 3

*Shah v. MyFitnessPal, Inc.*,
    No. 25-cv-04430-PCP, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ............................ *passim*

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200 (1998) ..................................................................................................... 12

*Smith v. Google, LLC*,
    735 F. Supp. 3d 1188 (N.D. Cal. 2024) ....................................................................... 9, 10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ....................................................................................................... 3, 6

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ........................................................................................... 3

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ....................................................................................................... 3, 6

*Turner v. Nuance Commc'ns, Inc.*,
    735 F. Supp. 3d 1169 (N.D. Cal. 2024) ............................................................................. 9

*Weiner v. ARS Nat'l Servs., Inc.*,
    887 F. Supp. 2d 1029 (S.D. Cal. 2012) .............................................................................. 9

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) ....................................................................... 18, 19

**Statutes**

18 U.S.C. §§ 2510 *et seq.* ........................................................................... 5

18 U.S.C. §§ 2701 *et seq.* .................................................................... *passim*

18 U.S.C. § 2702(a)(2) ............................................................................ 21

Cal. Penal Code § 502 ........................................................................ *passim*

Cal. Penal Code § 630 .............................................................................. 9

Cal. Penal Code § 632 ....................................................................... 2, 9, 11

Cal. Penal Code § 632(a) ......................................................................... 9

Cal. Penal Code §§ 630 *et seq.* ........................................................... *passim*

**Other Authorities**

Restatement (Second) of Torts, § 652D cmt. C, illus. 11 ........................... 15

**I. INTRODUCTION**

Millions of Americans rely on Google's Gmail, Chat, and Meet services every day. Google's services are an important part of everyday life in the digital age as users discuss deeply personal topics with close relations, convey confidential information to their healthcare providers, and significantly more. Google understands the centrality of its services in modern life and the high value users place on maintaining their privacy. Thus, Google outwardly promises that users have full control over their data and privacy. However, behind the scenes, Google violated this promise on an almost incomprehensible scale.

In October of 2025, Google secretly enabled its AI bot to eavesdrop on, collect and analyze every email, message, and communication users sent throughout the entire history of their Google account. For some users, this history dates back more than two decades and spans countless life events. As a result, Google robbed users of control of their private data on an almost incomprehensible scale in order to monetize the vast amounts of personal data users have entrusted to Google's services.

Plaintiffs Thomas Thele and Melo Porter seek to right these privacy violations and end Google's surreptitious practices. Contrary to the arguments Google puts forth in its motion to dismiss, Plaintiffs have adequately pleaded violations of California Invasion of Privacy Act (Cal. Penal Code §§ 630 *et seq.* ("CIPA")) and California Comprehensive Computer Data Access and Fraud Act (Cal. Penal Code § 502 ("CDAFA")), and their other privacy causes of action are plausibly alleged and specifically establish how Google's conduct is highly offensive and invasive. Google's motion ("MTD") should be denied in its entirety.

**II. BACKGROUND**

Plaintiffs' class action arises from Google's surreptitious access to and use of Plaintiffs' and putative class members' private communications across Google's services, including Gmail, Chat and Meet. *See* First Amd. Compl. ("FAC") ¶¶ 1–5. Users across Google's services can voluntarily enable the use of "Smart Features" in their Google account. *Id.* ¶ 1. By enabling Smart Features, users were informed that they were consenting to the use of Gemini AI. *Id.* ¶ 2. However, on or about October 10, 2025, Google enabled the Smart Features across users' accounts without

their knowledge or consent. *Id.* ¶¶ 2–3. As a result, Google granted Gemini AI access to monitor and track every message users sent, including the entire history of emails in their Gmail accounts and any attachments thereto. *Id.* ¶ 3.

Plaintiffs allege that "Google surreptitiously turned on the 'Smart features' setting in" their data privacy settings without their "knowledge or consent and began tracking [their] private communications with Gemini AI," including these Plaintiffs' "private messages and conversations," "financial information and records, employment information and records," and a range of additional, similarly sensitive information. *Id.* ¶¶ 7-8. Google's unauthorized surveillance and recording of Plaintiffs' private communications violates the CIPA, the CDAFA, the Stored Communications Act (18 U.S.C. §§ 2701 *et seq.* ("SCA")), the right to privacy under the California Constitution, and the common law tort of intrusion upon seclusion. *See* FAC ¶¶ 36–83.

## III. __ARGUMENT__

Google's conduct plainly violates CIPA, which prohibits the use of "an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication." Cal. Penal Code § 632. Similarly, Google violates CDAFA's proscriptions against "knowingly accessing and without permission . . . us[ing] any data . . . to wrongfully control or obtain money, property, or data" or to "take, copy, or make use of any data from a computer." Cal. Penal Code § 502. With respect to Plaintiffs' California constitutional and common law claims, Plaintiffs' Complaint marshals academic research, articles from major media outlets, and public opinion surveys supporting the proposition that Google's unauthorized monitoring and recording of users' private communications represents a severe breach of social norms and is an egregious violation of their right to privacy. FAC ¶¶ 17, 24–28, 43–57. Thus, Plaintiffs plausibly allege that Google's unauthorized monitoring and recording of private communications represents a severe breach of their right to privacy.

Plaintiffs' allegations are as specific as they are plausible, and Plaintiffs should be afforded an opportunity to engage in discovery to uncover the full extent of Google's unauthorized surveillance and to explain to a jury that Google's conduct so egregiously violates social norms as to be actionable under constitutional, statutory, and common law.

## A.    Legal Standard

At the pleading stage, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009) (citation and quotation marks omitted). A complaint need only "contain[] 'sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face.'" *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, "[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [a] plaintiff, both of which are plausible, [a] plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## B.    Plaintiffs Sufficiently Allege Article III Standing

To establish Article III Standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). Defendant contests only the first element, injury in fact. *See* MTD at 7-9. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The Supreme Court has explained that "[v]arious intangible harms can also be concrete" where the harm bears a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" . . . "includ[ing], for example, . . . intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (citations omitted). Pursuant to *TransUnion*, courts "assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).

### 1.    Plaintiffs' Injuries Are Concrete

Here, Plaintiffs allege that Google surreptitiously turned on Gemini AI in Plaintiffs' Google accounts without Plaintiffs' knowledge or consent. *See* FAC ¶¶ 7–8. As a result, Gemini AI was

granted unauthorized access to record, store, and exploit the entire recorded history of Plaintiffs' communications across Google's services, including the contents of every private email and attachment sent and received throughout the existence of Plaintiffs' Gmail accounts. *See id.* ¶¶ 3, 7–8, 17–19. Plaintiffs allege that they value their privacy and expected that the messages sent in their password-protected accounts would remain private. *See id.* ¶¶ 7–8, 35(b).

Further, while Plaintiffs were unaware that Gemini AI was secretly tracking and monitoring their messages, Plaintiffs sent emails and messages concerning a number of deeply personal and confidential matters, including regarding Plaintiffs' financial records, employment records, medical records, and private communications between and about family, friends, and other contacts. *Id.* Google illicitly compiles the private data Gemini AI surreptitiously collects from across Google's services and aggregates the information with existing user profiles. *Id.* ¶¶ 18–20. In this way, Google develops unauthorized, comprehensive profiles that provide improper monetizable insights into users' private lives.

The injury Plaintiffs suffered is precisely that which has been made actionable at common law for intrusion upon seclusion. Courts in the Ninth Circuit have held that these and other less invasive categories of information constitute legally protected interests. *See, e.g., Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1033 (C.D. Cal. 2012) (finding allegations that defendant used plaintiff's Gmail account to view information about the terms of plaintiff's employment, including his compensation, "clearly implicated [p]laintiff's legally protected interest in the privacy of his employment and financial affairs"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 924 (N.D. Cal. 2023) (finding Google's collection of anonymized browsing data sufficient to confer standing for invasion of privacy, CIPA and CDAFA claims); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1192 (S.D. Cal. 2024) (finding allegations that defendant recorded and shared "deeply personal" communications on web chat are sufficient to plead injury in fact); *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025) (finding allegations that defendant "deprived [plaintiff] control of personal information regarding his digital activity and profile" is sufficient "to show a concrete injury to his right to privacy and, subsequently, Article III standing"); *Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-

PCP, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026) (finding plaintiff sufficiently alleged Article III standing where "the type of information allegedly collected" included "personal topics like nutrition and fitness tracking").

Consistent with this authority, Plaintiffs sufficiently allege a concrete harm. *Campbell v. Facebook, Inc.* is directly on point. There, plaintiffs alleged "Facebook scanned their private messages looking for links to web pages" and collected and used information about those web links without the user's consent in violation of CIPA and Title I of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 *et seq. Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1112 (9th Cir. 2020). The Court of Appeals held that plaintiffs "claimed a violation of the concrete privacy interests that ECPA and CIPA protect" in alleging that "Facebook identifies and collects the contents of users' individual private messages . . . without consent." The court further explained that this harm was sufficient "regardless of how the collected data was later used." *Id.* at 1119. The Ninth Circuit recently indicated that the holding in *Campbell* is consistent with current law, noting that "a violation of those statutes gave rise to a concrete injury" "because there was 'a straightforward analogue between' the protections codified in those statutes against viewing or using private communications and the common law privacy tort of 'unreasonable intrusion upon the seclusion of another.'" *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 994 (9th Cir. 2023) (quoting *Campbell*, 951 F.3d at 1117).

The allegations here concern a far greater and more intrusive harm than that of the web links revealed in *Campbell*. Here, Plaintiffs contend that Google is not merely monitoring for specific types of content, rather Google monitors and collects the contents of *all* of Plaintiffs' communications across the entire history of Plaintiffs' accounts. *See* FAC ¶ 3. These include communications regarding Plaintiffs' financial, medical, and employment records, and Plaintiffs' communications with friends and family. *See id.* ¶¶ 7–8. That Google reviews and collects the contents of Plaintiffs' private messages without their consent means that Plaintiffs have alleged a violation of concrete privacy interests.

Plaintiffs further allege that Google aggregates the private information collected into vast user profiles that create monetizable insights for advertising purposes. The Ninth Circuit has found

allegations such as this are sufficient to confer standing. For example, the Ninth Circuit found that plaintiffs adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm where "by correlating users' browsing history with users' personal Facebook profiles—profiles that could include a user's employment history and political and religious affiliations—Facebook gained a cradle-to-grave profile without users' consent." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) ("*Facebook Internet Tracking*").[1] Plaintiffs' allegations here constitute a similar harm because Plaintiffs allege that Gemini AI accesses the entirety of Plaintiffs' recorded email history to develop a similarly vast cradle-to-grave user profile.

Google fails in its attempt to contort the facts of this case to analogize with those of *Kishnani* and *Mitchener*. *See* MTD at 8–9. Considering nearly identical complaints, the courts in both instances were entirely precluded from determining whether plaintiffs had any privacy interest in the information collected because plaintiffs alleged only "that Defendant invaded [their] privacy by impermissibly collecting [p]laintiff's 'data' and 'information.'" *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 WL 1745726, at *3 (N.D. Cal. June 24, 2025), *appeal dismissed*, No. 25-4452, 2025 WL 2943080 (9th Cir. Oct. 3, 2025); *Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471-NW, 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025), *appeal dismissed*, No. 25-4990, 2025 WL 3191910 (9th Cir. Oct. 23, 2025). Here, Plaintiffs' allegations provide significantly greater detail than the general allegation that defendants collected "data" and "information." Plaintiffs expressly allege eleven specific categories of protected information that Gemini AI has tracked and collected on an ongoing basis since it was first surreptitiously enabled

---

[1] Although *Facebook Internet Tracking* pre-dates *TransUnion* and there is some disagreement across the Ninth Circuit as to whether *Facebook Internet Tracking* was overruled, courts in this District have often found that the reasoning is consistent with *TransUnion* and remains good law. *See, e.g.*, *See, e.g., James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023) ("Nothing about *TransUnion* guts the above holding in *Facebook*, particularly because *Facebook* postdates *Spokeo*, the precedent on which *TransUnion* largely relied."); *Popa*, 153 F.4th at 794 (indicating that *In re Facebook* "still accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes" that would have been overruled by *TransUnion*); *Gabrielli*, 2025 WL 2494368, at *5 ("The Ninth Circuit has not disavowed *Facebook* in the wake of *TransUnion*."); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1106 (N.D. Cal. 2025) (relying on *TransUnion* and *In re Facebook* in finding plaintiff alleged sufficient harm for Article III standing for invasion of privacy claim); *Brown*, 685 F. Supp. 3d at (same).

OPPOSITION TO MOTION TO DISMISS
No. 5:25-cv-09704-NW

on or about October 10, 2025. *See* FAC ¶¶ 2, 7–8. These categories are sufficiently descriptive to allow this Court to determine that Plaintiffs adequately allege Defendant intruded upon Plaintiffs' legally protected privacy interests. *See, e.g.*, *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (assessing whether plaintiff had a protected privacy interest in the "specific category" of "IP addresses for devices").

Defendant's reliance on *Popa* is similarly misplaced as *Popa* is readily distinguishable. There, "[t]he court observed that the information allegedly collected by defendants 'reveals nothing more than the products that interested . . . Popa'" on a pet supply website "and thus is not the type of private information that the law has historically protected." *Popa*, 153 F.4th at 787. Here, the information Google collects is significantly more sensitive and, as discussed *supra*, is the type of private information that the law has historically protected.

### 2. Plaintiffs Have Standing to Seek Injunctive Relief

Defendant contends that Plaintiffs additionally lack standing to seek injunctive relief because they fail to allege a sufficient harm. *See* MTD at 9–10. "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). However, courts have found that retention of private data constitutes a continuing harm.

For example, an opinion in this District is squarely on point. *See A.B. by & through Turner v. Google LLC* ("*A.B. v. Google*"), 737 F. Supp. 3d 869, 878 (N.D. Cal. 2024), *motion to certify appeal denied*, No. 23-cv-03101-PCP, 2024 WL 4933345 (N.D. Cal. Dec. 2, 2024). In *A.B. v. Google*, Google unsuccessfully asserted this same argument, which is similarly unavailing here. There, plaintiffs alleged that Google obtained personal information from their children without parental consent in violation of California's constitutional right to privacy and common law intrusion upon seclusion, among other federal and statutory violations. *Id.* at 875–76. Plaintiffs sought, in part, to compel Google to permanently delete, destroy or sequester all of the personal information Google collected without consent. *Id.* at 878. Google argued that plaintiffs lacked standing to seek injunctive relief because they failed to establish a "real or immediate" threat of future harm where Google no longer collected private information from minors. *Id.* The court

disagreed, finding that Google's continued retention and use of the data at issue constitutes a harm that is sufficient to establish standing to seek injunctive relief. *Id.*

Here, as in *A.B. v. Google*, Plaintiffs allege Defendant retains the information it already improperly collected, and that it continues to monitor and track private communications. *See* FAC ¶ 2 (as of the date of filing, Defendant "continues to track these private communications"), ¶ 31 ("Users are still being deceived and tracked without consent unless they are made aware of the change to their data privacy settings and affirmatively turn off the 'Smart features' settings"), ¶ 35(d) ("Google's deceptive and deliberate actions have thwarted and continue to threaten Plaintiffs' (and Class Members') ability to exercise control over their own privacy while using their Gmail, Chat, and Meet accounts."), ¶ 38 (Defendant "violated and continues to violate" CIPA). Accordingly, injunctive relief is appropriate to protect Plaintiffs and Class Members both from: (1) continuing to suffer a loss of control of the private information that Google improperly collected and retains in their user profiles; and (2) the ongoing tracking and monitoring of their private communications. As in *A.B. v. Google*, these harms are sufficient to establish standing to seek injunctive relief.

Google further argues that Plaintiffs can eliminate any future harm by disabling the feature that enables Gemini AI. *See* MTD at 10. This argument fails in three respects. First, Plaintiffs allege that Google retains the private data that it improperly collected to date, which in itself constitutes an ongoing harm. Second, Google maintains the ability to simply re-enable the feature in the future as it did in October 2025. Thus, any option to disable the feature is illusory, if Plaintiffs must continually check that is not re-enabled. Finally, before a user can turn off the Smart Feature, they must first be made aware that Gemini AI is collecting and reviewing their private communications. Absent notice and explicit consent, class members may remain unaware of Gemini AI's invasive data collection.

Accordingly, Google's argument that Plaintiffs lack standing must fail. Plaintiffs sufficiently allege Google intrudes upon legally protected privacy interests and maintains improperly collected private data and therefore causes concrete harm to Plaintiffs and putative class members.

**C.** **Plaintiffs Plausibly Allege a Violation of the California Invasion of Privacy Act Because Google Used an Electronic Recording Device to Record Confidential Communications Without Plaintiffs' Consent**

The CIPA prohibits, in pertinent part, "us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication, whether the communication is carried on . . . by means of a telegraph, telephone, or other device . . ." Cal. Penal Code § 632(a). "The three elements of a section 632(a) claim are: '(1) an electronic recording of (or eavesdropping on); (2) a 'confidential' communication; and (3) all parties did not consent.'" *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1178 (N.D. Cal. 2024) (citing *Weiner v. ARS Nat'l Servs., Inc.*, 887 F. Supp. 2d 1029, 1032 (S.D. Cal. 2012)).

"In enacting [CIPA], the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society.'" *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002) (quoting Cal. Penal Code § 630; *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985)). Moreover, "[t]he Legislature enacted section 632 to ensure an individual's right to control the firsthand dissemination of a confidential communication, and expressed its intent to strongly protect an individual's privacy rights in electronic communications." *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1392 (2011).

**1.** **Plaintiffs Sufficiently Allege Google Recorded Confidential Communications Within the Meaning of the CIPA**

"[A] conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan*, 27 Cal. 4th at 776–77.

Google's contention that there is a rebuttable presumption that online communications are not confidential under CIPA overstates the law. *See* MTD at 10–11. "California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632." *Brown*, 685 F. Supp. 3d at 938; *see also Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) ("The scattering of state and federal cases (none from the California Supreme Court) considering various communications on a case-by-case basis do not establish that California

law presumes the non-confidentiality of all online communication."). "Ultimately, *Flanagan* controls and instructs that the question under CIPA is whether, at the time of the conversation, the aggrieved party had a reasonable expectation that it would be 'confined to the parties thereto.'" *Brown*, 685 F. Supp. 3d at 939 (finding plaintiffs sufficiently alleged an expectation of privacy in communications made while in incognito mode "given Google's portrayal of Incognito mode and its failure to explicitly notify users it would . . . record their communications"). Indeed, courts in the Ninth Circuit have held that plaintiffs have plausibly alleged a reasonable expectation of privacy in emails containing various categories of confidential information. *See, e.g., Smith*, 735 F. Supp. 3d at 1200 (emails containing tax information).

Here, Plaintiffs sufficiently allege that they had a reasonable expectation of privacy when they sent confidential communications on Google's platforms without knowledge that Google had surreptitiously enabled Gemini AI to monitor and record those communications. Plaintiffs allege they used password-protected accounts, valued their privacy, and did not consent to Google's access of their confidential communications. *See, e.g., Mintz*, 906 F. Supp. 2d at 1033 (weighing use of password and lack of consent in favor of finding reasonable expectation of privacy under common law tort). Moreover, Plaintiffs allege that Google purported to offer Plaintiffs and Class members the ability to control whether Gemini AI technology accesses their data and Google warranted that it would respect those choices. FAC ¶ 29. In reality, Google purposely deceived Plaintiffs and putative class members by enabling Gemini AI to monitor their communications regardless of their prior privacy settings. *Id.* Courts have found that misrepresentations about the use of data render a plaintiff's expectation of privacy plausibly reasonable. *See Shah*, 2026 WL 216334, at *4 (finding plaintiff sufficiently alleged expectation of privacy under California common law where plaintiff alleged defendant affirmatively misrepresented how data would be used, even though the type of data collected may not be sufficient alone to find reasonable expectation of privacy).

Finally, Plaintiffs specifically allege that Google monitored emails in which Plaintiffs conveyed confidential information relating to, for example, their medical and financial records. Courts have found these categories of information sufficient to allege a reasonable expectation of

privacy in internet communications. *See, e.g.*, *Mintz*, 906 F. Supp. 2d at 1033 (finding reasonable expectation of privacy in emails containing financial and employment information); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (finding reasonable expectation of privacy in internet communications with medical provider).

Accordingly, Plaintiffs sufficiently allege they had a reasonable expectation of privacy in their communications for purposes of CIPA.

### 2. Plaintiffs Did Not Consent to Gemini AI Monitoring or Recording Plaintiffs' Confidential Communications

Google is wrong to contend that Plaintiffs consented to Google accessing the contents of *all* of their emails and other communications on Google's platforms regardless of whether those communications are confidential. *See* MTD at 11, 13–14.

"[C]onsent must be actual" and therefore, the disclosures at issue "must 'explicitly notify' users of the practice at issue." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) (quoting *In re Google Inc.*, No. 13-md-02430-LHK, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013)). "The disclosures must have only one plausible interpretation for a finding of consent." *Id.* at 620. "In privacy cases, the standing and merits inquiries will often be intertwined. . . . But in virtually every privacy case, consent will be part of the merits inquiry." *D'Angelo*, 726 F. Supp. 3d at 1193–94 (S.D. Cal. 2024) (quoting *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 788 (N.D. Cal. 2019) ("*Facebook User Profile Litig.*")).

As a preliminary matter, Google's argument defies the express purpose of section 632. The argument would render every communication made by its approximately 130 million American Gmail users subject to eavesdropping by Google even where users communicate legally protected private information. This directly contravenes the Legislature's express intent in enacting section 632: "to strongly protect an individual's privacy rights in electronic communications." *See Kight*, 200 Cal. App. 4th at 1392.

Even so, Google fails to establish that Plaintiffs consented to the precise conduct at issue here: that Google would automatically enable Gemini AI to monitor and monetize the entirety of users' communications across Google's platforms without their knowledge or consent. Nor is

Plaintiffs' consent the only plausible conclusion from Google's Terms of Service and other disclosures. Indeed, Google's Terms of Service provide that Google may use AI specifically for the benefit of users in an effort "to provide [users] with simultaneous translations, and to better detect and block spam and malware." *See* FAC ¶ 15. Nothing from this statement suggests that Plaintiffs consented to Google monitoring and recording every confidential communication for purposes of creating an exhaustive and monetizable user profile. Google did not disclose this conduct and, therefore, Plaintiffs could not have consented to it.

Further, Google misrepresented that users would have the ability to choose to opt-in to the use of Gemini AI. *See* FAC ¶¶ 2–5, 7-8, 16, 19, 21, 29–31; Harris Decl. Ex. A, 2 ("across our services, you can adjust your privacy settings to control whether we collect some types of data and how we use it"). From these representations, it is more than plausible a reasonable consumer would believe that Google's use of Gemini AI must be enabled by the user before Gemini AI could access any of their communications. *See, e.g.*, *Rodriguez*, 772 F. Supp. 3d at 1103 (denying motion for summary judgment based upon finding that "from the perspective of a reasonable user, it is unclear Plaintiffs were consenting to the data collection at issue").

Accordingly, Plaintiffs sufficiently allege they did not consent to Gemini AI recording and analyzing their private communications.

**D.      Plaintiffs Properly Plead Their California Constitutional and Intrusion Upon Seclusion Claims**

To state a claim under the California Constitution's right to privacy, a plaintiff must show: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994).[2] Similarly, a common law intrusion upon seclusion claim must allege: "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *Shulman v. Grp.*

---

[2] The *Hill* elements do not constitute a categorical test, but rather serve as threshold components of a valid claim to be used to "weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant." *Loder v. City of Glendale,* 14 Cal. 4th 846, 893 (1997).

*W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998). "Because of the similarity of the tests, courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Internet Tracking*, 956 F.3d at 601. For purposes of Plaintiffs' constitutional and common law privacy claims, Google does not contest whether a legally protected privacy interest is at stake. *See* MTD at 7–8 (contesting only in the context of standing). Therefore, for purposes of this motion, Plaintiffs analyze their California constitutional and common law claims together under these two elements.

Whether expectations of privacy are "reasonable," and whether actions constitute "serious" invasions of privacy "are mixed questions of law and fact." *See Hill*, 7 Cal. 4th at 40. Only if "the *undisputed* material facts show no reasonable expectation of privacy," may "the question of invasion [of privacy] be adjudicated as a matter of law." *Id.* Additionally, "[u]nder California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *Facebook User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("plaintiffs have adequately alleged that they suffered an egregious invasion of their privacy where Facebook gave app developers and business partners their sensitive information on a widespread basis"). In arguing that Plaintiffs have not alleged a serious violation of a reasonable expectation of privacy, Google fails to accept all of Plaintiffs' allegations as true and construed in a light most favorable to Plaintiffs, as this Court must do.

### 1. Plaintiffs Allege a Reasonable Expectation of Privacy in Their Confidential Communications

Google asks this Court to determine as a matter of law, upon the pleadings and without a developed factual record, that users of email platforms and other internet communication services can never allege a reasonable expectation of privacy in the messages communicated on those platforms because such claims are based on a plaintiff's interactions with defendant's own website. *See* MTD at 12–13. Google's argument flies in the face of Plaintiffs' allegations, the current judicial decisions recognizing the sensitivity of the type of private information at issue here even when communicated on a defendant's website, and Google's own representations and Terms of Service. Plaintiffs' allegations are more than sufficient to establish a plausible basis for their

reasonable expectation in the privacy of their private communications.

Plaintiffs and putative class members reasonably expected that Google would *not* monitor or store the contents of their private communications if they did not expressly opt in to Google's use of Gemini AI. *See, e.g.*, FAC ¶ 16. Indeed, Google "has long acknowledged the importance of user control over privacy settings." *Id.* ¶ 24. In 2018, Google's Chief Privacy Officer testified before the United States Senate Committee on Commerce, Science, and Transportation that "users trust [Google] to keep their personal information confidential and *under their control.*" *Id.* Google's own Terms of Service further misrepresented that users "can adjust your privacy settings to control whether we collect some types of data and how we use it." *Id.* ¶ 15. Additionally, Google misrepresented that AI on its platform would be used to benefit users, for example, to "detect and block spam and malware." *Id.* ¶ 15. These misrepresentations fueled Plaintiffs' reasonable expectation of privacy in the information they communicated through Google's services. *Id.* ¶ 40.

Plaintiffs sufficiently allege a reasonable expectation of privacy pursuant to numerous decisions in this District. *See, e.g., Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (finding "accumulation of a 'vast repository of personal data'" from sources including online communications "contravenes" plaintiffs' reasonable expectation of privacy). For example, a Northern District trial court found that an individual plead a reasonable expectation of privacy as against Facebook in their online messages on Facebook's own website. *See*, e.g., *Facebook User Profile Litig.*, 402 F. Supp. 3d at 797 (denying motion to dismiss intrusion claim where plaintiff alleged Facebook "disclosed the contents of communications between two people on Facebook's ostensibly private messenger system").

Similarly, here, Plaintiffs have a reasonable expectation of privacy in their confidential communications made through Google's ostensibly private messaging platforms regardless of Google's ownership of the platform. Indeed, Plaintiffs relied upon this expectation when they sent private communications concerning, in part, their financial, employment and medical records. Additionally, Plaintiffs reasonably expected that they would be able to control Google's access to the contents of their private communications. Courts have found a reasonable expectation of privacy where a defendant misrepresents how plaintiff's data will be used. *See, e.g., Shah*, 2026

WL 216334, at *3 (finding plaintiff's allegations sufficient for standing where plaintiff alleged that defendant misrepresented "how private information will be used" because such a misrepresentation "can constitute [] an invasion of privacy") (citing Restatement (Second) of Torts, § 652D cmt. C, illus. 11). Here, Plaintiffs relied on Google's misrepresentations that Plaintiffs could control how Google accessed and used their information.

Google's citations to the contrary are readily distinguishable. Indeed, Google significantly overstates the court's finding in *Mikulsky*, which does not stand for the proposition, as Google contends, that a defendant is shielded from privacy claims when a plaintiff chooses to send private communications on defendant's own website. *See* MTD at 12 (quoting *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024)). Rather, the court indicated a much narrower finding, namely that "[c]ourts have been unwilling to find a cognizable privacy interest in *browsing data* from users on [d]efendant's own website." *Mikulsky*, 713 F. Supp. 3d at 846. *Mikulsky* did not consider whether, as here, a plaintiff has a reasonable expectation of privacy in *emails* containing legally protected confidential information that were sent through a password-protected account on defendant's website. *Mikulsky* is therefore inapposite.

Google additionally argues that Plaintiffs cannot establish a reasonable expectation of privacy because Plaintiffs consented to Google reviewing, recording, and analyzing their private communications through Google's Terms of Service. *See* MTD at 13–14. Plaintiffs incorporate here the arguments set forth in Section III.C.2, *supra*. Plaintiffs sufficiently allege they did not consent to Google's surreptitious practices through the Terms of Service or by any other means.

### 2. Google's Collection of Private Communications Is a Serious Invasion of Plaintiffs' Protected Privacy Interests

Plaintiffs' allegations demonstrate that Google's surreptitious review and collection of the contents of their private communications violates time-honored social norms and represents an egregious breach of their reasonable expectations of privacy.

Plaintiffs allege Google surreptitiously collects and stores highly sensitive emails, messages, and other communications across Google's platforms and aggregates this information into exhaustive user profiles providing monetizable insights into users' private lives. *See*, *e.g.*,

FAC ¶¶ 18–19.  Google uses Gemini AI to access, store and exploit the entire recorded history of its users' private communications.  *Id.* ¶ 3.  The nature of the information captured in these communications is highly sensitive and revealing, including financial, medical and employment records, political and religious activities, and information about Plaintiffs' habits relating to socializing, eating, shopping, exercising, and parenting.  *Id.* at ¶¶ 7–8.  By amassing immense amounts of personal information concerning tens of millions of users, Google has systematically divested them of the ability to "mak[e] intimate personal decisions or conduct[] personal activities without observation [or] intrusion."  *Hill*, 7 Cal. 4th at 35.[3]

In addition, courts have held that even routine data collection practices may be highly offensive when the defendant disregards consumers' privacy choices.  For example, a court in this District recently denied a motion to dismiss where, as here, allegations involved the secret and unauthorized collection of user data, sufficient to generate unique profiles of individuals.  *See Shah*, 2026 WL 216334, at *5–6.  The court explained that "'[d]eceit can be a kind of "plus" factor' in determining whether an action is highly offensive."  *Id.* at *5 (quoting *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021)).  Considering allegations that defendant collected and disseminated information including "browsing history, . . . demographic information, interests and preferences, shopping behaviors, . . . and/or geolocation data," the court found that plaintiffs sufficiently "identified specific kinds of information whose sharing, despite [defendant's] contrary representations, could plausibly be deemed 'highly offensive.'"  *Id.* at *6.

The data collected here is vastly more sensitive, as discussed in section III.D.1 *supra*.  Moreover, Google's misrepresentations regarding users' ability to enable Gemini AI if they wish to consent to the disclosure bear on the seriousness of the privacy violation as well.  Here, as in *Shah*, Plaintiffs allege Google informed users that they could control the use of their data and opt-in to disclosing their communications to Gemini AI by enabling the Smart Features.  However,

---

[3] The California Supreme Court has at times described "[l]egally recognized privacy interests [as] generally" falling in two classes: "informational privacy" and "autonomy privacy."  Both privacy interests are at stake here.  "Informational privacy" is at issue because Plaintiffs allege Google "misuse[d] [their] sensitive and confidential [location] information."  Likewise, "autonomy privacy" is at issue because Google's comprehensive cataloging of Plaintiffs' confidential communications—and associated life choices—restricts their ability to "mak[e] intimate personal decisions . . . without observation [or] intrusion."  *Hill*, 7 Cal. 4th at 35; *see also* FAC ¶¶ 1–5, 7–8.

Google provided no such choice. Instead, Google surreptitiously enabled Gemini AI to begin monitoring and recording users' communications without Plaintiffs' knowledge or consent. *See* FAC ¶¶ 4–6. Google's "deceit and disregard" for Plaintiffs' preferences, while not required to allege a serious violation of their privacy, underscores the egregiousness of the privacy violation at issue here.

Unsurprisingly, Google is unable to marshal case law supporting its contention that accessing and collecting the contents of Plaintiffs' private emails and messages without Plaintiffs' consent is somehow not sufficiently egregious to support common law and constitutional invasion of privacy claims. Google's authorities involve far less personal information and do *not* support its assertion that Plaintiffs cannot establish an objectively reasonable expectation of privacy here. MTD 12. Moreover, Google cites *no case* in which the defendant engaged in conduct even bordering on the deception alleged here.

For example, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022), involved significantly less, and less sensitive, information than at issue here. In *Hammerling*, plaintiffs alleged only that Google tracked how long users spent on various apps, including, for example a menstrual cycle tracking app. *Id.* at 1091. Plaintiffs in that case did not allege that Google could discern any private information about a user's menstrual cycle from the amount of time that they spent on a cycle tracking app. *Id.* Here, though, Plaintiffs allege precisely the categories of intimate information that Google can discern from Plaintiffs' communications, including facts regarding Plaintiffs' financial, medical, and employment records.

*Popa* is similarly distinguishable for the reasons discussed in section III.B.1 *supra*. There, the court found that a plaintiff did not have a legally protectable privacy interest in her product preferences on a pet supply website. *Popa*, 153 F.4th at 787. Those preferences can hardly compare to Plaintiffs' privacy interests in their financial, medical, and employment records.

Google *ignores* the myriad ways Plaintiffs allege that Google's conduct egregiously violates longstanding social norms. Google does not engage with several pages of detailed allegations regarding social norms about user privacy. *See* FAC ¶¶ 17, 20–31. These allegations are tethered to academic research, articles from major media outlets, and public opinion surveys. *Id.* These

authorities underscore the plausibility of Plaintiffs' allegation that Google's surreptitious monitoring and recording of the contents of their private communications contradicts time-honored social norms and egregiously violates their reasonable expectations of privacy.

In sum, Plaintiffs' allegations are more than sufficient to state claims for intrusion upon seclusion and invasion of privacy under the California Constitution.

### E. Plaintiffs Properly Plead a Claim for Violations of the California Comprehensive Computer Data Access and Fraud Act

#### 1. Google Accessed Plaintiffs' Data Without Authorization

The CDAFA creates a private right of action against anyone who, in pertinent part:

> (1) Knowingly accesses and without permission . . . uses any data, computer, computer system, or computer network in order to . . . wrongfully control or obtain money, property, or data.
> (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.
> * * *
> (7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Cal. Penal Code § 502(c). "A party acts 'without permission' under the CDAFA when it "circumvents technical or code-based barriers in place to restrict or bar a user's access." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1053 (N.D. Cal. 2018).

Plaintiffs allege that Google surreptitiously accessed Plaintiffs' Gmail, Chat, and Meet accounts without Plaintiffs' knowledge or consent and installed and enabled Google Gemini AI software to track and collect Plaintiffs' data, communications, and personal information. *See* FAC ¶¶ 2, 7–8. Through the use of Gemini AI, Google accessed Plaintiffs' private emails, messages, and other communications without their knowledge and recorded and made use of that data without their consent. *See* FAC ¶¶ 7–8. Plaintiffs' allegations are sufficient to state a claim for violations of CDAFA.

Google contends that there is no unauthorized access here because Google can and must access and record the contents of every private communication made by users in their password-protected accounts in order to properly run its services. *See* MTD at 14–16. Google's argument

does not comport with Ninth Circuit precedent.

Courts in this District have found that a lack of disclosure combined with defendant's surreptitious overriding of plaintiffs' privacy preferences is sufficient to plead that defendant circumvented technical barriers in violation of the CDAFA. For example, in *Brown v. Google*, 525 F. Supp. 3d 1049, a court in this District found that a plaintiff sufficiently alleged a claim under section 502(c)(2) of CDAFA where plaintiff alleged that Google installed software that "transmitted data without notice" and where Google failed to provide an opportunity to opt out of the functionality. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1075 (N.D. Cal. 2021). The court explained that this software rendered "ineffective any barrier [p]laintiffs wished to use to prevent the transmission of their data." *Id.* Accordingly, the court denied Google's motion to dismiss plaintiff's CDAFA claim. *Id.*

The same reasoning applies here. Plaintiffs allege that Google installed the Gemini AI software without notice to Plaintiffs and began recording Plaintiffs' data without any opportunity to opt out in advance. FAC ¶¶ 7–8. Moreover, the fact that Google was able to enable Gemini AI in Plaintiffs' privacy settings without their consent renders illusory any future attempt to block the feature. Google's argument that it has the right to access and change Plaintiffs' privacy settings (*see* MTD at 15) further supports Plaintiffs' position that any barrier Plaintiffs could have used can be rendered ineffective at Google's discretion. These allegations are plainly sufficient to state a CDAFA claim.

Additionally, *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018), is illustrative. There, the court found plaintiffs adequately plead that "Facebook used and accessed their call and text logs without their permission, and specifically with the intention to obtain money at the expense of unwitting users." *Id.* at 1053 (quotation marks omitted). Plaintiffs alleged that "Facebook scraped call and text data from the Android device such as the type of call, the time of each call, the number dialed, the individual called, and the duration of each call." *Id.* The court found that "the lack of a disclosure, combined with Facebook's averred exploitation of the permission setting on older Android OS devices, is enough to plead Facebook circumvented technical barriers in violation of the CDAFA." *Id.* Similarly, here, Plaintiffs allege that Google

collected Plaintiffs' data without their consent or knowledge for the purposes of monetizing the vast information aggregated into their user profiles. Plaintiffs' allegations are sufficient to state a claim for CDAFA.

### 2. Plaintiffs Sufficiently Allege a Cognizable Injury

Google contends that Plaintiffs fail to allege a cognizable economic loss sufficient to state a CDAFA claim. *See* MTD at 16–17. However, Plaintiffs' allegations are plainly sufficient.

"Section 502 sets no threshold level of damage or loss that must be reached to impart standing to bring suit. Under the plain language of the statute, any amount of damage or loss may be sufficient." *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-cv-05780-JW, 2010 WL 3291750, at *4 (N.D. Cal. July 20, 2010)

Plaintiffs allege more than a loss of privacy. Plaintiffs allege that in order to purportedly opt-out and stop Google's unlawful conduct, users must first learn about Google's improper use of Gemini AI and then "proactively go into their account settings and locate and turn off this feature to prevent Gemini AI from tracking their" private communications. FAC ¶ 16. Plaintiffs further allege that Google "collect[s] and utilize[s] users' private communications . . . and combine[s] it with existing data profiles" that Google uses in part for monetizable advertising purposes. *Id.* ¶¶ 18–19. Thus, Google is unjustly enriched by intercepting and using Plaintiffs' and putative class members' data. *Id.* ¶ 67. Additionally, Google's retention of Plaintiffs' improperly collected private data constitutes a continuing harm that necessitates prompt relief, as discussed in section III.B.2 *supra*. Finally, the aggregation of Plaintiffs' and putative class members' private data places them at increased risk for further privacy violations for which Plaintiffs and putative class members must remain on high alert. *Id.* ¶ 20. Courts in this District have found that allegations such as these are sufficient grounds to allege injury.

For example, in *Rodriguez*, plaintiffs alleged that Google collected their data in contradiction to Google's representations and compiled the data in user profiles that provided lucrative advertising opportunities. *Rodriguez*, 772 F. Supp. 3d at 1101. The court denied summary judgment as to disgorgement of profits, finding that a reasonable juror could find that plaintiffs were harmed by Google "illegally profit[ing] from the use of their data." *Id.* at 1109–10. Similarly,

here, Plaintiffs allege that Google's unlawful access to their private data resulted in monetizable insights into their personal lives and Plaintiffs seek equitable relief. FAC ¶¶ 19, 67–68. Plaintiffs' allegations are sufficient for pleading purposes.

Additionally, courts in this District have found that any acts that a plaintiff takes to stop defendant's violation of CDAFA, even "a few clicks of a mouse," is sufficient to demonstrate at summary judgment that plaintiff suffered damage or loss as a result of defendant's purported CDAFA violations. *See Power Ventures*, 2010 WL 3291750, at *4–5. Here, Plaintiffs allege much more than a few clicks of a mouse. Plaintiffs allege that in order to stop Google from collecting their private communications in violation of CDAFA, users must recognize Gemini AI is collecting their data and that Google's representations about users having control over their data were false, identify the location in their user settings to turn off the Smart Features, and affirmatively turn off the Smart Features. Even so, Google may again enable the features anytime. Accordingly, Plaintiffs allege harm sufficient for standing under the CDAFA.

**F.** **Plaintiffs Properly Plead Violations of the Stored Communications Act**

Google argues that it cannot be liable for accessing its own servers under the SCA. MTD at 2, 17. However, the SCA proscribes the very behavior at issue here.

"Congress passed the [SCA] in 1986 as part of the Electronic Communications Privacy Act." *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 971 (C.D. Cal. 2010). "The SCA was enacted because the advent of the [i]nternet presented a host of potential privacy breaches that the Fourth Amendment does not address." *Id.* (quotation marks and citation omitted). The SCA prohibits "an entity providing remote computing service to the public" from "knowingly divulg[ing] to any person or entity the contents of any communication which is carried or maintained on that service." 18 U.S.C. § 2702(a)(2).

In *American Marriage Ministries v. Google, LLC*, a court in this District found that the contents of a plaintiff's Google Ads and Analytics data are protected by the SCA. *Am. Marriage Ministries v. Google, LLC*, No. 21-mc-80040-SK, 2021 WL 1526757, at *2 (N.D. Cal. Apr. 12, 2021). The very same data is at issue here and Google's use of Plaintiffs' user profiles to direct third parties' advertisements to Plaintiffs similarly violates the SCA. Google collects the contents

of Plaintiffs' and class members' emails and other communications without their consent and in direct contradiction to their efforts to protect their communications through privacy settings and the use of passwords, two-factor authentication, and/or encryption. FAC ¶¶ 7–8, 18, 47, 54. Google incorporates the contents of Plaintiffs' private communications into cradle-to-grave profiles that Google then uses for advertising purposes. *Id.* ¶¶ 7–8, 18. Thus, Plaintiffs sufficiently allege Google's actions directly violate the SCA.

Google argues that it is immune from any claim under the SCA by virtue of section 2701(c)(1). *See* MTD at 17. However, Plaintiffs' complaint alleges violations of the SCA more broadly, and their claim can fairly be read as encompassing a claim under section 2702, which includes no such immunity clause. If the Court is inclined to grant Google's motion as to this claim, Plaintiffs respectfully request leave to amend.

### G. Plaintiffs Allegations Are Entitled to the Presumption of Truth

In a final effort to overcome Plaintiffs' well-pled claims, Google asserts a straw man argument that Plaintiffs' allegations are not entitled to a presumption of truth. *See* MTD at 3 n.2, 18–19.

First, Plaintiffs provide a sufficient factual basis for their assertion that the Smart Features were secretly enabled in Plaintiffs' accounts, unlike Google's contention to the contrary. MTD at 18. Plaintiffs allege that they did not consent to the use of Gemini AI in their accounts. *See* FAC ¶¶ 2–3, 7–8. *Id.* Plaintiffs allege that they value their privacy and take measures to protect the privacy of the accounts. *See id.* ¶¶ 7–8. And yet somehow the Smart Features were enabled in Plaintiffs' accounts on or about October 10, 2025. *See id.* ¶ 2. Taken as true, as Plaintiffs' allegations must be at this stage, Plaintiffs sufficiently allege that Google surreptitiously enabled the Smart Features in Plaintiffs' accounts.

Second, Google contends that these allegations are somehow "belied" by an article referenced in the FAC which indicates that the Smart Features can be toggled on or off. *See* MTD at 18–19. Google mischaracterizes Plaintiffs' allegations. Plaintiffs do not allege that users are unable to toggle the Smart Feature off. Rather, the gravamen of Plaintiffs' complaint is that Google initially activated the invasive feature without Plaintiffs' or putative class members' knowledge or

consent and can do so again in the future despite users having the illusory option to "disable" the Smart Features. That users can physically toggle the Smart Features off does *not* undermine Plaintiffs' argument or the presumption of truth. Thus, the article to which Google refers (*see* FAC ¶ 17; RJN Ex. C) does not undermine Plaintiffs' argument because Plaintiffs never argued that the feature could not be toggled off. Thus, there is no "internal inconsistency," as Google contends.

Finally, Plaintiffs allege more than a "belief" that Google scans, reads, and analyzes the content of their private communications. Indeed, the author Google references above indicated that upon learning of Gemini AI's "downright creepy" capabilities to track and analyze private information, the author reveals "I don't plan on letting Gemini access my personal email anymore." RJN Ex. C, 7–8. Accordingly, the author intends to toggle off the Smart Feature. Whether Google will respect the author's choice in the future remains unclear. Nevertheless, nothing about these factual allegations undermines Plaintiffs' complaint. The author further cautions readers to "make sure you know what's in your data and that you're comfortable with a chatbot that can learn intimate facts about you before you decide to give it access to your email." *Id.* at Ex. C, 7. Plaintiffs were never given the opportunity to decide whether Gemini AI should be given access to their intimate information. Finally, Plaintiffs allege that Google combines the information it collects into highly detailed and monetizable user profiles. FAC ¶ 18. These allegations are more than plausible. Accordingly, the Court should deny Google's request and consider Plaintiffs' allegations with the presumption of truth that is required at the pleadings stage.

## IV. <u>CONCLUSION</u>

Plaintiffs have plausibly alleged that Google violated their privacy rights under CIPA, the California Constitution, common law intrusion upon seclusion, the SCA, and CDAFA by monitoring and recording their private communications without their consent and in direct violation of Google's Terms of Service and public acknowledgment that "users trust [Google] to keep their personal information confidential and *under their control*." *Id.* ¶ 24 (emphasis added). Therefore, Plaintiffs respectfully request that the Court deny Google's motion to dismiss. In the alternative, Plaintiffs should be provided an opportunity to amend the complaint accordingly.

Dated: February 25, 2026

Respectfully Submitted,

*/s/ Tina Wolfson*

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Alyssa D. Brown (SBN 301313)
abrown@ahdootwolfson.com
Lisa Cintron (SBN 356009)
lcintron@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: 310.474.9111
Facsimile:   310.474.8585

Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone:  917.336.0171
Facsimile:   917.336.0177

*Counsel for Plaintiffs and the Proposed Class*