BENJAMIN S. SOFTNESS (SBN 361435)
bsoftness@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

LAURA E. HARRIS (Admitted *pro hac vice*)
lharris@kslaw.com
**KING & SPALDING LLP**
1290 Avenue of the Americas, 14th Floor
New York, NY 10104
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

ZACHARY A. MCENTYRE (Admitted *pro hac vice*)
zmcentyre@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-2176
Facsimile: (404) 572-5100

*Counsel for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THOMAS THELE and MELO PORTER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:25-cv-09704-NW<br><br>[*The Honorable Noël Wise*]<br><br>**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date: April 15, 2026<br>Time: 9:00 AM<br>Location: Courtroom 3 – 5th Floor |

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1
II. ARGUMENT ..... 3
A. Plaintiffs Fail to Allege Injury-In-Fact for Article III Standing ..... 3
1. Plaintiffs Cannot Amend Their FAC Through Briefing ..... 3
2. Plaintiffs Fail to Allege a Particularized Injury ..... 4
3. Plaintiffs Do Not Have Standing to Obtain Injunctive Relief ..... 6
B. Plaintiffs' Core Smart Features Allegations Are Not Plausibly Alleged ..... 7
C. Plaintiffs Fail to Plead Required Elements of Their Privacy Claims ..... 8
1. Plaintiffs Consented to Google's Alleged Data Collection ..... 8
2. Plaintiffs' CIPA Claims Independently Fail ..... 11
3. Plaintiffs' California Constitution and Common Law Claims Also Fail ..... 11
D. Plaintiffs Do Not State a Claim Under CDAFA or the SCA ..... 12
1. Plaintiffs Fail to Allege Lack of Authorization and Damage or Loss ..... 12
2. Plaintiffs Abandon Their Alleged Stored Communications Act Claims ..... 14
III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Marriage Ministries v. Google, LLC*,
2021 WL 1526757 (N.D. Cal. Apr. 12, 2021) .......... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 5

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 13

*Bui-Ford v. Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) .......... 13, 14

*Campbell v. Facebook*,
951 F.3d 1106 (9th Cir. 2020) .......... 5, 6

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 11

*Cyph, Inc. v. Zoom Video Comms., Inc.*,
642 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 3

*D'Angelo v. FCA US, LLC*
726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 5

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 13

*Doe v. Wyndham Hotels & Resorts*,
2024 WL 3088722 (E.D. Cal. June 20, 2024) .......... 7

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......... 7

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) .......... 12, 13

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 10

*Facebook, Inc. v. Power Ventures, Inc.*,
2010 WL 3291750 (N.D. Cal. July 20, 2010) .......... 14

*Frenzel v. AliphCom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) .......... 3

*Gabrielli v. Haleon US Inc.*
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 5

*Gator.com Corp. v. L.L. Bean, Inc.*,
398 F.3d 1125 (9th Cir. 2005) .......... 7

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 12, 13

*Hovagimian v. Maxum Cas. Ins. Co.*,
2022 WL 765005 (C.D. Cal. Mar. 8, 2022) .......... 13

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) .......... 10

*Katz-Lacabe v. Oracle America, Inc.*
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 10

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 4, 5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 4

*M.D. v. Google LLC*,
2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) .......... 8

*Matthews v. Apple, Inc.*,
769 F. Supp. 3d 999 (N.D. Cal. 2024) .......... 3

*Mintz v. Mark Bartelstein & Associates Inc.*
906 F. Supp. 2d 1017, 1033 (C.D. Cal. 2012) .......... 5

*Mitchener v. CuriosityStream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) .......... 4, 5

*Morilha v. Alphabet, Inc.*,
2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) .......... 15

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......... 12

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2024 WL 5399664 (N.D. Cal. Sept. 18, 2024) ........ 8

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ........ 4

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 11

*Rodriguez v. Google*, 772 F. Supp. 3d 1093 (N.D. Cal. 2025) ........ 10, 13, 14

*Shah v. MyFitnessPal, Inc.* 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ........ 5, 10

*Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017) ........ 9

*Thomas v. Cnty. of Humboldt*, 124 F.4th 1179 (9th Cir. 2024) ........ 2

*A.B. ex rel. Turner v. Google LLC*, 737 F. Supp. 3d 869 (N.D. Cal. 2024) ........ 6

*Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........ 13

**Statutes**

18 U.S.C. § 2701(a) ........ 14, 15

18 U.S.C. § 2702(a) ........ 14, 15

Cal. Pen. Code § 502(e) ........ 13

Cal. Pen. Code § 632(a) ........ 11

Fed. R. Civ. P. 15(a)(2) ........ 3

## I. INTRODUCTION

Plaintiffs' Opposition does not defend the complaint Plaintiffs actually filed—which itself was an *amended* complaint. That complaint (the "FAC") fails to allege anything specific about *Plaintiffs'* own Gmail, Chat, and Meet communications. It does not allege that *Plaintiffs'* data was aggregated, profiled, or monetized. It does not allege that *Plaintiffs'* data was ever divulged or disseminated outside of the provision of Google services to which Plaintiffs agreed. And, critically, it does not allege that Plaintiffs have ever even *viewed* the Smart Features setting in their accounts—much less turned it off or on—at any time. These shortcomings are fatal.

Instead, and perhaps recognizing these fatal deficiencies, Plaintiffs now assert in their Opposition Brief that they *did* allege many of those facts. For example:

| Topic | The Opposition's Characterization | What the FAC Actually Alleges |
|---|---|---|
| **Categories of information accessed** | The Opposition states that Plaintiffs "**sent emails and messages** concerning a number of deeply personal and confidential matters, including **regarding Plaintiffs' financial records, employment records, medical records**." Opp. 4 (emphases added).<br><br>The Opposition states Gemini AI "tracked and collected . . . **eleven specific categories** of protected information." Opp. 7(emphases added). | Plaintiffs allege "the following **could** be determined from those communications: financial information and records, . . . the identities of his family, friends, and other contacts, social habits and activities, . . . the extent to which he is involved in the activities of his children (**if any**), and what those activities are." FAC ¶¶ 7–8 (emphases added). |
| **Actual monitoring vs. capability** | The Opposition states that "Google illicitly **compiles** the private data Gemini AI surreptitiously **collects**." Opp. 5 (emphases added). | The FAC alleges "Google has created **the means to** illicitly compile all of its users' private communications." FAC ¶ 19 (emphasis added). |

| | | |
|---|---|---|
| **"Exhaustive" profiles** | The Opposition claims that "Google illicitly **compiles** . . . and **aggregates** [users'] information with existing user profiles," Opp. 4, and "Google **incorporates** the contents of Plaintiffs' private communications into cradle-to-grave profiles that Google **then uses** for advertising purposes," Opp. 22 (emphases added). | The FAC alleges Google "**may combine**" users' information across Google services, is "**able**" to do so, and has "**the means to**" create profiles of its users. FAC ¶¶ 18–19 (emphases added). |
| **Monetization and advertising** | The Opposition states that Google "**uses** [Plaintiffs' data] for advertising purposes." Opp. 22 (emphasis added). | Plaintiffs allege their data is "monetiz**able**." FAC ¶ 19. Google "**may** combine information" for advertising purposes. *Id.* ¶ 18 (quoting 2012 Google announcement) (emphases added). |

In sum, Plaintiffs allege nothing more than the *possibility* of conduct and say even less about how they could have been injured thereby. *See, e.g.*, *Thomas v. Cnty. of Humboldt*, 124 F.4th 1179, 1189 (9th Cir. 2024) (recognizing that allegations an event "may" occur is "mere speculation" (quotation omitted)). The Opposition rewrites Plaintiffs' hypothetical allegations to make them more concrete than they are. To state the obvious, the FAC governs; Plaintiffs' belated characterizations do not.

Plaintiffs fare no better on the merits. Setting aside the conclusory allegation that Smart Features was surreptitiously turned on, Plaintiffs' chief objection is to the feature itself, and that objection fails as a matter of law. Plaintiffs do not contest that they are bound by the terms of Google's Terms of Service and Privacy Policy, nor that those contracts notify Plaintiffs of the personalization features they now challenge. Plaintiffs' citation to different consents, for different features, in different cases, are no help. Nor can Plaintiffs allege that the Internet communications at issue are subject to common law or Constitutional protection, as those doctrines do not apply to communications—like the ones at issue here—that recipients can easily share. Plaintiffs meekly defend their statutory claims, which have no application to alleged access by the service provider itself.

Plaintiffs have amended their complaint once already, and their allegations became no more concrete. Plaintiffs could have asked to cure their pleading deficiencies in response to Google's Motion to Dismiss, *see* Fed. R. Civ. P. 15(a)(2), but they did not. The history of this case suggests that this is the most Plaintiffs can say, and the best they can do. For these reasons, Google respectfully requests that the FAC be dismissed with prejudice.

## II. ARGUMENT

Looking past Plaintiffs' characterizations of their allegations to their actual allegations, the FAC should be dismissed for three reasons. First, Plaintiffs do not allege any concrete, particularized injury. Second, Plaintiffs' core allegations regarding the Smart Features toggle are conclusory and implausible. And finally, Plaintiffs fail to allege key elements of their claims.

### A. Plaintiffs Fail to Allege Injury-In-Fact for Article III Standing

#### 1. Plaintiffs Cannot Amend Their FAC Through Briefing

Plaintiffs assert in their Opposition—for the first time—that they "sent emails and messages concerning a number of deeply personal and confidential matters, including regarding [their] financial records, employment records, medical records, and private communications between and about family, friends, and other contacts." Opp. at 4. Plaintiffs include no such concrete or definitive allegations in their FAC (or in the original complaint). Rather, the FAC only speculates that some information in identical lists of hypothetical categories "*could* be determined" from their "communications." *See id.* (emphasis added). That's as far as their allegations go. They do not describe in *any* detail the contents, attachments, dates, senders, or recipients of any "private" messages. As courts in this District routinely hold, Plaintiffs may not use their Opposition to amend their FAC. *See, e.g.*, *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014); *Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1015 (N.D. Cal. 2024); *Cyph, Inc. v. Zoom Video Comms., Inc.*, 642 F. Supp. 3d 1034, 1043 (N.D. Cal. 2022).

Plaintiffs failed to add concrete and particularized allegations when they amended the first time, and they elected not to seek leave to amend their complaint again. The Court should disregard the more substantiated assertions in their Opposition and, instead, analyze whether the allegations they actually pled state a claim for relief. They do not.

### 2. Plaintiffs Fail to Allege a Particularized Injury

Plaintiffs expressly "do[] not recite" in their FAC "the precise" "communications" they claim Google has "track[ed]." FAC ¶¶ 7–8. Instead, each plaintiff lists eleven identical categories of information Google "could have" gleaned from their communications. The last of those categories—"the extent to which [they are] involved in the activities of [their] children (*if any*), and what those activities are"— underscores the hypothetical nature of the categories they list. Further, the FAC contains no allegations that Plaintiffs' communications were actually monetized or otherwise used—just that Google was "able" to do so. *See id.* ¶ 18. Descriptions of hypothetical or potential injuries fall short of alleging "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

A plaintiff does not have standing to bring privacy claims when he fails to allege anything concrete, particularized, or actual in his complaint about his own purportedly "private" communications. *See Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *3 (N.D. Cal. June 24, 2025); *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *3–4 (N.D. Cal. Aug. 6, 2025). "[P]otential, generalized harms" are insufficient. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 n.5 (9th Cir. 2025). As this Court's recent decisions in *Kishnani* and *Mitchener* demonstrate, a plaintiff must identify specific personal information implicating a protectable privacy interest. *See Kishnani*, 2025 WL 1745726, at *3 (finding no standing where the plaintiff failed to "identify the specific personal information [they] disclosed that implicates a protectable privacy interest."); *Mitchener*, 2025 WL 2272413, at *3–4 (dismissing privacy claims for lack of jurisdiction where plaintiff posited only "hypothetical" harm). Plaintiffs here refused the opportunity to do so. *See* FAC ¶¶ 7–8 (Plaintiffs "do[] not recite . . . the precise communications" that were "track[ed]").

Plaintiffs contend (at 6) that Google "contort[s]" their FAC to fit *Kishnani* and *Mitchener*, but no contortion is needed—the decisions are on point. As in both cases, Plaintiffs allege only what Google "*could* gain" through its alleged conduct, *e.g.*, *Kishnani*, 2025 WL 1745726, at *3, but they do not allege the specific types of data Google *does* in fact access or collect. *See* Mot. to

Dismiss 7–10. Indeed, it is Plaintiffs who use their Opposition to stretch their FAC to fit what Article III requires. They stretch the FAC's hypothetical allegations—*i.e.*, that certain information "could" be determined or that Google is "able" to monetize personal information, FAC ¶¶ 7, 8, 18, 19—into concrete harms in Opposition—*i.e.*, that Plaintiffs "sent emails and messages . . . regarding Plaintiffs' financial records, employment records, medical records," Opp. 4, and that Google "illicitly compiles . . . and aggregates [users'] information" to use "for advertising purposes," Opp. 4, 22. Plaintiffs have now had two opportunities to allege what Article III requires (and what they claim in their Opposition to have already done). They have not, and *Kishnani* and *Mitchener* control.

Plaintiffs string-cite (at 4-5) five cases for the proposition that intrusions into certain "categories" of private information are enough for standing. But Plaintiffs again miss the critical point. Whatever categories of information were at issue in those cases, the plaintiffs there did what Plaintiffs here twice have not: they alleged (and in some cases even *proved*) that the defendants actually accessed the information at issue.

- In *Mintz v. Mark Bartelstein & Associates Inc.*, the court found on summary judgment that a defendant had "deliberately accessed Plaintiff's Gmail account without permission, opened several emails, and even read their contents, including" a specific message that included the plaintiff's new employment and compensation terms. 906 F. Supp. 2d 1017, 1033 (C.D. Cal. 2012).
- In *Brown v. Google LLC*, the plaintiffs "set forth *specific facts*" indicating that the defendant "ha[d] access to *their data* . . . through the collection and storage of information from users' private browsing history." 685 F. Supp. 3d 909, 919 (N.D. Cal. 2023) (emphasis added).
- In *D'Angelo v. FCA US, LLC*, the plaintiffs alleged that *all* conversations (including theirs) were actually *reviewed and used* by a third party that had embedded interception code on defendant's website. 726 F. Supp. 3d 1179, 1187–88 (S.D. Cal. 2024).
- In *Gabrielli v. Haleon US Inc.*, the court found that plaintiff alleged that he affirmatively "reject[ed] . . . cookies" but that the defendant website continued to use cookies "providing performance, targeting, and social media services . . . *on [Plaintiff's] device*" specifically. 2025 WL 2494368, at *1, 3 (N.D. Cal. Aug. 29, 2025) (emphasis added).
- In *Shah v. MyFitnessPal, Inc.*, the plaintiffs included no hypothetical allegations: "Plaintiffs here allege that [MyFitnessPal] told them that their individual information would not be shared because they could [and allegedly did] opt out of unnecessary cookies, and yet it was shared," including "demographic information, interests and preferences, [and] shopping behavior." 2026 WL 216334, at *1, 3 (N.D. Cal. Jan. 27, 2026) (emphasis added).
- *Campbell v. Facebook*, 951 F.3d 1106 (9th Cir. 2020), is far afield. There, the Ninth Circuit did little more than confirm that an alleged violation of ECPA or CIPA is enough for

standing under the Supreme Court's then-developing (pre-*TransUnion*) jurisprudence about whether a statutory violation confers standing. *See id.* at 1118. In any event, there, the plaintiffs claimed "that Facebook violated ECPA and CIPA when it [actually] intercepted, catalogued, and used" information taken from private Facebook messages. *Id.* at 1119.

Plaintiffs' allegations, again, are nothing like the concrete allegations in these cases. They describe what their communications "could" contain (FAC ¶ 7), and they allege what Google is now "able" to do (*e.g.*, FAC ¶ 18)—without ever alleging that specific communications containing specific content were actually accessed.

Plaintiffs fail to allege any concrete, particularized, or actual facts to demonstrate that they have been injured. Therefore, their case should be dismissed for lack of standing.

### 3. Plaintiffs Do Not Have Standing to Obtain Injunctive Relief

Plaintiffs likewise lack standing to obtain injunctive relief. They contend (at 8) that Google's retention of illegally obtained information is a future harm for which injunctive relief is proper. But that argument again goes beyond Plaintiffs' actual allegations. Plaintiffs do not allege that Google has in fact obtained private information (only that it is "able" to), nor have they alleged what Google actually does or will do with it. *See, e.g.*, FAC ¶ 19 (alleging that data from unspecified "communications" could "*enable*[] Google to" engage in various practices). *A.B. ex rel. Turner v. Google LLC*, 737 F. Supp. 3d 869, 878 (N.D. Cal. 2024), is therefore inapposite. There, it was uncontested that Google possessed the particular data at issue and thus that the plaintiff had standing to seek an injunction requiring its deletion. *See id.* Plaintiffs' vague and hypothetical allegations do not support an analogous finding.

Moreover, even assuming that Plaintiffs are currently harmed, they can toggle Smart Features off. Plaintiffs characterize (at 8) this option as "illusory" given Google's apparent ability "to simply re-enable it." Yet, again, Plaintiffs outrun the FAC. Plaintiffs do not allege that they made an affirmative Smart Features selection and that Google reversed it. At most, Plaintiffs allege (implausibly, as discussed *infra*) that the default setting changed for all users. In fact, Plaintiffs do not allege they ever touched the Smart Features switch at all. Nothing in the FAC merits the inflammatory—and conclusory—suggestion that the Smart Features toggle is illusory. Absent any such plausible allegations, Plaintiffs offer no reason for the Court to depart from the usual rule that

injunctive relief is unavailable where a plaintiff "can moot her need" for such relief "by her own conduct." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129–30 & n.3 (9th Cir. 2005) (collecting cases) (quotation omitted).[1]

**B. Plaintiffs' Core Smart Features Allegations Are Not Plausibly Alleged**

Plaintiffs' core allegation that Google secretly changed the Smart Features default from off to on in October 2025 is too conclusory to be credited, and Plaintiffs' Opposition cannot cure the FAC's deficiencies with respect to this core allegation. *See* Opp. at 22 (it was "somehow" enabled). Plaintiffs do not allege that they ever used—or even observed—the Smart Features toggle in any position prior to October 2025 (or since). Their bald assertion that the feature was default-off before that date and became default-on only after that date thus lacks *any* factual allegations that could nudge it "across the line from conceivable to plausible," *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (internal quotation marks and citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."). In response, Plaintiffs only repeat (at 22) their claim that they did not consent to the purported change; that non-sequitur on the merits does not make the allegation any more plausible.

The PC Mag article further undermines Plaintiffs' assertion. As Plaintiffs acknowledge (at 23), the author observed Gemini AI "access[ing] [his] personal email" in November 2025. But Plaintiffs omit that the author affirmatively allowed Gemini to access his email by subscribing to and paying for a "premium Gemini plan." Dkt. 23-4, at 2. Plaintiffs never address that inconsistency between the article and their allegations that Gemini gained access to their Gmail accounts by default in October 2025. *See Doe v. Wyndham Hotels & Resorts*, 2024 WL 3088722, at *11 (E.D. Cal. June 20, 2024) (inconsistent allegations need not be credited).

---

[1] Plaintiffs also contend (at 8) that Google "retains" the data it unlawfully collected and that the Smart Features toggle is only relevant if Plaintiffs are "made aware that Gemini AI is collecting and reviewing their private communications." Neither point makes much sense. Google is accused of accessing data already present on its own servers; at most, Plaintiffs are challenging how that data is used within Google, which is not an issue of retention. Plaintiffs' second point conflates standing to seek an injunction with the merits. Even assuming Plaintiffs were denied the "notice and explicit consent" they cite (and they were not), it would not change the fact that they can "moot [their] need" for injunctive relief by turning the feature off.

Last, Plaintiffs allege no facts to support their belief that the enablement of Smart Features causes Gemini AI to scan users' data and monetize their content. Plaintiffs' "response" is *ipse dixit*: "Plaintiffs allege that Google combines the information it collects into highly detailed and monetizable user profiles. These allegations are more than plausible." Opp. 23 (citation omitted). In fact, Plaintiffs allege only that such activity is "enabled" (FAC ¶ 19)—not that it is done—and the Opposition's gloss is unjustified. Moreover, Plaintiffs' citations from the PC Mag article provide no substantive support. The author describes functionality after he "signed up for [the] AI Pro plan," "a premium Gemini plan." But the article does not say that Google uses Gemini, Smart Features, or any other product to create monetizable user profiles or to exploit communications for advertising purposes.

### C. Plaintiffs Fail to Plead Required Elements of Their Privacy Claims

Plaintiffs' privacy claims also fail because they fail to plead required elements of those claims. "Consent generally defeats privacy claims." *M.D. v. Google LLC*, 2025 WL 2710095, at *4 (N.D. Cal. Sept. 23, 2025). Here, because Plaintiffs have not plausibly alleged that Google secretly changed the Smart Features default, their agreement to the Privacy Policy and Terms of Service is fatal to their claims. In addition, Plaintiffs fail to plead required elements of their CIPA, Constitutional, and common law privacy claims. Specifically, Plaintiffs fail to plausibly allege that their communications were "confidential" under CIPA, and they fail to plausibly allege that Google's conduct was "highly offensive" as required to state Constitutional and common law privacy claims.

#### 1. Plaintiffs Consented to Google's Alleged Data Collection

Plaintiffs do not contest (and thus concede[2]) that they are bound by Google's Terms of Service and Privacy Policy. As catalogued in Google's Motion to Dismiss, Google's Privacy Policy and Terms of Service disclose the operation of personalization features like Smart Features. Mot. 13. The Privacy Policy discloses that Google may collect (1) "the content you create, upload, or

[2] "When a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2024 WL 5399664, at *11 (N.D. Cal. Sept. 18, 2024) (quotation omitted).

receive from others when using our services," including "email you write and receive," and (2) "[c]ommunications data, such as emails." Dkt. 23-2, at 2, 20. And it may do so for purposes including "deliver[ing Google's] services" (for example, "suggesting recipients from your contacts"), "[d]evelop[ing] new services" (such as generative AI services), "improv[ing Google's] services," and "provid[ing] personalized services" (such as "recommendations" and "personalized content"). *Id.* at 5–6.

Plaintiffs assert in the Opposition (at 11) that they did not consent to the "precise conduct" at issue here, but the FAC proves the contrary. Its very first paragraph includes a screenshot explaining that Smart Features "personalize[s] my experience"—which is exactly what Plaintiffs consented to in the Privacy Policy, including through the use of AI. Google's Terms of Service further explain that Google is "constantly developing new technologies and features," and cites "us[ing] artificial intelligence" as a particular "example" of one such technology. Dkt. 23-3, at 4. That is what Smart Features does, according to the FAC. *See* FAC ¶ 1 (screenshot).[3]

Plaintiffs argue (at 11) that the consent they provided in the Terms and Privacy Policy does not suffice, and the only sufficient consent would be to Google "automatically enabl[ing] Gemini AI to monitor and monetize" their data. Tellingly, however, Plaintiffs do not cite the FAC to support that characterization of Google's conduct. Nor could they: Plaintiffs never allege that Google monetized their data (only that the possibility is now "enable[d]," FAC ¶ 19). This allegation reflects what Plaintiffs speculate Google might hypothetically do in the future, not what it has done. Thus, the Opposition contends that Plaintiffs did not consent to conduct that they did not allege. In any event, while consent must be "actual," it need not be as specific as Plaintiffs suggest—or else every single user action implicating data (*e.g.*, spellcheck) would require an individual consent. That is not the law. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017) (holding that a "broad" disclosure can "disclose[] the precise conduct at issue in th[e] case" because "a contractual term is not ambiguous just because it is broad").

[3] The conclusory assertion in the FAC that Google *changed* the Smart Features default in or around October of last year is utterly implausible, for the reasons explained *supra* and in Google's motion to dismiss. *See* Mot. to Dismiss at 18–19.

*Rodriguez v. Google*, 772 F. Supp. 3d 1093 (N.D. Cal. 2025), is no help to Plaintiffs, as the court there confronted at summary judgment significantly distinct facts than those alleged here. There, the court concluded that a range of different disclosures about different functions and services arguably combined to state that Google was *not* engaging in the data collection at issue in that case. *See id.* at 1100–03. No such ambiguity is alleged here, nor is any present under the plain text of the relevant terms.

Plaintiffs also now claim (at 12) that rendering Smart Features "opt-out" constitutes a "misrepresent[ation]" because the Privacy Policy says users can "adjust" their settings. As a threshold matter, Plaintiffs did not assert claims for fraud, misrepresentation, or unfair or deceptive trade practices. In any event, it is plainly accurate to state that a setting can be "adjust[ed]" when it can be turned from off to on, or on to off.

Plaintiffs separately argue (at 13–15) that they had a "reasonable expectation" of privacy that saves their Constitutional and common-law claims. But, again, Plaintiffs' straightforward consent vitiates this point entirely because "a party that consents to having information collected has no reasonable expectation of privacy." *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021). Plaintiffs' cases prove the point. The opinion in *Katz-Lacabe v. Oracle America, Inc.* cited, on the one hand, the "sensitive health and personal safety information" the defendant was collecting and the defendant's representations that it was *not* collecting and aggregating "personal information that is sensitive" on the other. 668 F. Supp. 3d 928, 936 (N.D. Cal. 2023). In other words, plaintiffs had plausibly alleged a reasonable expectation of privacy over certain data in the *absence* of user consent.[4] Here, by contrast, Google's disclosures plainly describe and inform Plaintiffs of the conduct at issue in this case. *See* Dkt. 23-2, at 2, 5–6, 20.

The Privacy Policy and Terms that Plaintiffs do not dispute govern here cause Plaintiffs' CIPA, common-law, and Constitutional claims all to fail as a matter of law. And given the content

[4] *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019), and *Shah*, 2026 WL 216334, at *4, 5–6, which Plaintiffs also cite (at 14–15), concerned disclosures to third parties and are inapposite.

of those terms, it is not a failure Plaintiffs will be able to cure.[5]

**2. Plaintiffs' CIPA Claims Independently Fail**

Plaintiffs' CIPA claims fail for an additional independent reason: their Internet communications lack CIPA protection in this context. Plaintiffs acknowledge (at 10) that they must plausibly allege they had a reasonable expectation that their communications would be "confined to the parties thereto." They then argue that they had such an expectation because their accounts were password-protected and they sent confidential information. *Id.* That is a non sequitur.

Protecting the privacy and security of its users' Gmail, Chat, and Meet communications is of paramount importance for Google. But "confidentiality" *under CIPA*—which is a necessary element of Plaintiffs' claim—hinges on something else: the ease with which message *recipients* (not the service provider or the sender) can share the communications with third parties (for example, by forwarding them). *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications."). Emails, chats, and Meet conversations can be so shared, and Plaintiffs do not argue the contrary in their opposition. Accordingly, courts recognize that such communications are generally (some courts say "presumptively") not entitled to CIPA protection. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (collecting cases).

Moreover, by failing to allege the specific content of any communications, Plaintiffs do not plausibly allege the existence of specific confidential information that might otherwise invoke CIPA's protections. *See* FAC ¶¶ 7–8; Mot. to Dismiss 11. The CIPA claims should be dismissed.

**3. Plaintiffs' California Constitution and Common Law Claims Also Fail**

In addition to having consented to Google's alleged conduct, Plaintiffs fail to allege the sort of "highly offensive" conduct California law requires. This is an independently sufficient ground on which to dismiss those two claims. As Google explained in its motion to dismiss, Plaintiffs'

[5] Plaintiffs also state in passing (at 11) that Google's consent "argument defies the express purpose of section 632." This is a curious argument, given that consent defeats a CIPA claim by the statute's plain terms. *See* Cal. Pen. Code § 632(a) ("without the consent of all parties").

vague and generalized allegations do not identify with nearly enough specificity the sorts of communications that courts have found to rise to the level of "highly offensive." *See* Mot. to Dismiss 14. Plaintiffs' lengthy protestations to the contrary (at 15–18) rely entirely on arguments the FAC does not support. Plaintiffs refer (at 16) to "[t]he nature of the information captured" as "vastly more sensitive" than in other cases, but they do not allege that any specific information was captured here. And they refer (at 16) to "deceit" as a "plus factor," but they allege no claims based on fraud or express misrepresentations—indeed, they consented to clear terms.

Plaintiffs also breathlessly accuse Google (at 13) of "ask[ing] this Court to determine as a matter of law . . . that users of email platforms and other internet communication services can never allege a reasonable expectation of privacy in the messages communicated on those platforms." In fact, Google's argument is far more modest. On these allegations, and given the plain terms of the Privacy Policy and Terms of Service, Plaintiffs consented to the operation of Smart Features, have not alleged a highly offensive intrusion, and fail to state a claim.

**D. Plaintiffs Do Not State a Claim Under CDAFA or the SCA**

Plaintiffs' remaining claims arise under CDAFA and the SCA. Each claim fails because Plaintiffs have not alleged essential elements of those claims.

**1. Plaintiffs Fail to Allege Lack of Authorization and Damage or Loss**

Under CDAFA, Plaintiffs must allege "computer . . . hacking." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023). But Plaintiffs do not allege "hacking," which requires allegations that the defendant "circumvent[ed] technical or code-based barriers in place to restrict or bar a user's access." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014) (collecting cases). Rather, they allege that Google accessed "its own website," which does not suffice to state a CDAFA claim. *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 716 (N.D. Cal. 2011); *see* FAC ¶ 1 (alleging that Gmail, Chat, and Meet are "Google's . . . services"). And in any event, Google expressly was authorized to access its own communication apps, as provided in its Terms of Service and Privacy Policy. *See* Dkt. 23-2 at 2, 20; Dkt. 23-3 at 4. In short, Google did not—and could not—"hack" its own apps.

Plaintiffs cite (at 19) a limited exception to that rule that is implicated when a service

provider is found to have ignored a "barrier" it offered users. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1075 (N.D. Cal. 2021). The analogy fails: here, there are no allegations that any plaintiff ever affirmatively toggled off Smart Features, nor any allegation that toggling Smart features off today would fail to disengage the features Plaintiffs complain of. Where Plaintiffs allege no conduct of their own, they may not claim that Google "render[ed] ineffective a[] barrier that *Plaintiffs* implemented." *Brown*, 525 F. Supp. 3d at 1075 (emphasis added).

Plaintiffs' reliance (at 19–20) on *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018), is even further afield. In that case, the plaintiffs alleged that the Facebook app was scraping call and text data *from elsewhere on users' Android mobile phones. Id.* at 1047. That is the sort of *third-party* "hacking" CDAFA governs; Plaintiffs' allegations that Google accessed "its *own* website," *Facebook Priv. Litig.*, 791 F. Supp. 2d at 716 (emphasis added), are distinct.

Moreover, Plaintiffs do not plead "damage or loss" under CDAFA. Cal. Pen. Code § 502(e). Plaintiffs make clear that their alleged injury in this case is a loss of privacy. *E.g.*, FAC ¶¶ 2–5, 7–8, 16–18, 20–31. But "alleged privacy invasions do not qualify" as "damage or loss" under CDAFA. *Heiting*, 709 F. Supp. 3d at 1020; *see also Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *6 (N.D. Cal. Feb. 20, 2024) (explaining that a plaintiff must allege "economic" damage or loss); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1081–82 (N.D. Cal. 2023) (rejecting privacy violations as sufficient damage or loss). Accordingly, Plaintiffs' allegations do not suffice to state a claim under CDAFA.

Apparently recognizing this issue, Plaintiffs now retreat from their privacy allegations and assert that they also alleged economic "damage or loss" through unjust enrichment. *See* Opp. at 20–21 (citing *Rodriguez*, 772 F. Supp. 3d at 1109–10). Again, Plaintiffs overstate their allegations. Plaintiffs' only mentions of "unjust enrichment" in the FAC are wholly conclusory and have no factual support. FAC ¶¶ 63, 67; *see also Hovagimian v. Maxum Cas. Ins. Co.*, 2022 WL 765005, at *4 (C.D. Cal. Mar. 8, 2022) ("The [complaint] fails to state a claim because it fails to identify exactly how Defendants are unjustly enriched at Plaintiff's expense in non-conclusory terms . . . ."). Moreover, Plaintiffs' sole mention of "profits" is their assertion that Google violated the Stored Communications Act, entitling them "to statutory damages or actual damages, including profits

earned by Google." FAC ¶ 83. And notably, Plaintiffs never alleged that Google "uses" their data for "advertising purposes," as they now claim. Opp. at 20 (citing FAC ¶¶ 18–19). Rather, Plaintiffs alleged Google had "the means" to use their data which is "monetiz*able*." FAC ¶¶ 18–19 (emphasis added). As with Plaintiffs' privacy allegations, these allegations are purely hypothetical about what Google *could* and *might* do, not what it *has* done. *Compare Rodriguez*, 772 F. Supp. 3d at 1109–10 (noting that the plaintiffs had presented affirmative evidence that Google was profiting from the use of their data).

Plaintiffs also insist that "courts in this District have found that . . . even 'a few clicks of a mouse,' is sufficient to demonstrate . . . that plaintiff suffered damage or loss" under CDAFA. Opp. at 21 (quoting *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *4 (N.D. Cal. July 20, 2010)). Plaintiffs misquote *Power Ventures*. Facebook, the plaintiff in that case, cited "technological security measures" it had imposed "to block" the defendants' unlawful access, which the court recognized as a "demonstrat[ion] that Facebook *expended resources* to stop [the defendants] from committing acts that Facebook now contends constituted [CDAFA] violations." *Power Ventures*, 2010 WL 3291750, at *4 (emphasis added). Plaintiffs' quotation referencing "a few clicks of a mouse" is from the *defendants'* characterization of the plaintiff's alleged injury, which the court rejected. *See id. Power Ventures* is entirely consistent with other cases in this District requiring some showing of "economic damage or loss." *Bui-Ford*, 2024 WL 694485, at *6 (quotation omitted). And as explained, Plaintiffs do not meet that standard.

**2. Plaintiffs Abandon Their Alleged Stored Communications Act Claims**

As one final example of Plaintiffs' attempt to rewrite the FAC through their Opposition, they argue in favor of imposing liability under the Stored Communications Act by citing a section they never mentioned in their pleading. Opp. 21–22. In the FAC, Plaintiffs allege that Google violated 18 U.S.C. § 2701(a) by "intentionally access[ing] Plaintiffs' and Class Members' Gmail, Chat, and Meet accounts without authorization." FAC ¶ 81; *see id.* ¶ 73 (reciting Section 2701(a) which prohibits "intentionally access[ing] without authorization a facility through which an electronic communication service is provided"). In Opposition, however, Plaintiffs quote Section 2702, and argue that Google is liable for violating that Section. Opp. 21 (quoting 18 U.S.C.

§ 2702(a)). Plaintiffs make no argument in favor of their alleged claim under Section 2701(a), all but conceding its dismissal. *See id.* at 22 ("If the Court is inclined to grant Google's motion as to this claim, Plaintiffs respectfully request leave to amend" to allege a violation of Section 2702.).

Even under Section 2702, Plaintiffs' allegations would be insufficient. Their FAC includes zero allegations to support their argument in Opposition that Google has "divulge[d]" any information to anyone. *See* Opp. at 21 (quoting 18 U.S.C. § 2702(a)). *American Marriage Ministries v. Google, LLC*, 2021 WL 1526757, at *2 (N.D. Cal. Apr. 12, 2021), does Plaintiffs no good. There, the court denied a motion to compel third party discovery because the data at issue was covered by Section 2702. *Id.* Google does not contest that Section 2702(a) can restrict disclosures to third parties. But Plaintiffs never allege that Google has divulged any of their communications. *See, e.g.*, *Morilha v. Alphabet, Inc.*, 2024 WL 5205542, at *3 (N.D. Cal. Dec. 23, 2024) (dismissing Section 2702(a) claim because the plaintiff did "not actually plead that Meta divulged any of his information or communications"). Therefore, Plaintiffs have failed to allege—in either the FAC or their attempted Second Amended Complaint (*i.e.*, their Opposition)—a violation of the Stored Communications Act.

## III. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss the FAC with prejudice for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim.

Dated: March 18, 2026

**KING & SPALDING LLP**

By: */s/ Laura E. Harris*

Laura E. Harris
Zachary A. McEntyre
Benjamin S. Softness

*Counsel for Defendant Google LLC*